UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

FATEH SINGH

        *Petitioner,*                                   **EMERGENCY PETITION**
                                                   **A No. 220-380-423**

v.

**JOHN  TSAKOURIS, Director, NYC Field Office,**
        **Enforcement and Removal Operations. U.S.**
        **Immigration and Customs Enforcement;**

**TODD LYONS ,**
        **Director, U.S. Immigration and Customs Enforcement;**

**KRISTI NOEM, Secretary of the U.S. Department of Homeland Security;**

**PAMELA BONDI, Attorney General of the United States, and**

**LUIS SOTO, Warden Delaney Hall, Newark, NJ**

        *Respondents.*

_____

### PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2241) AND EMERGENCY ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINING ORDER
.

1. FATEH SINGH ("Petitioner"), by counsel, respectfully petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and moves by Emergency Order to Show Cause and Temporary Restraining Order. This petition is filed on an emergency basis to prevent Petitioner's unlawful transfer or removal.

2. Counsel's ability to confer with Petitioner has been further constrained by his transfer between facilities, periods during which he was incommunicado with everyone, his absence from the ICE detainee locator system at times, and circumstances in which friends and family members were unable to ascertain his location. In addition, logistical limitations on attorney visitation scheduling at the facility, combined with the substantial distance between the detention facility and counsel's office, have restricted timely access.

3. Petitioner has not yet had an opportunity to review any documents underlying his arrest and detention

1

with counsel. Respondents have not provided to Petitioner any custodial documentation, including any administrative warrant, custody determination, charging document, or other records reflecting the asserted statutory basis for confinement. As a result of these factors, the allegations in this Petition are pleaded upon information and belief except where otherwise stated.

4. Without access to the documents that purportedly authorize detention, Petitioner cannot fully assess or respond to the government's asserted basis for custody. Petitioner therefore expressly reserves the right to amend or supplement the Petition as additional facts and documentation become available.

5. This Petition challenges the legality of Petitioner's arrest and continued detention under the Fourth Amendment, 8 U.S.C. §§ 1225, 1226, and 1357, the Due Process Clause, and binding agency regulations. The central question presented is straightforward: under what lawful statutory authority is Petitioner currently detained, and was that authority validly invoked?

6. Section 2243 provides that once a habeas petition is presented, *the Court shall "**forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted,**" and that the custodian "**shall make a return certifying the true cause of the detention**." **The statute further contemplates expedition, providing that the return shall be made within 3 days unless additional time is allowed for good cause.**

7. Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.,* 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

8. The Supreme Court has emphasized that freedom from physical restraint lies at the core of the liberty protected by the Constitution. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Where detention is challenged, the government must identify and justify the legal authority for incarceration.

**THE FACTS**
**THE ILLEGAL ARREST**

9. FATEH SINGH is a 37-year-old Indian man who was illegally detained by ICE at his place of

   employment, a Smoke Shop in Long Island on February 18, 2026.

10. It appears that ICE agents were targeting Indian-owned businesses in Long Island.

11. ICE Agents entered the store on several occasions to conduct reconnaissance of customers and workers.

12. The smoke shop is located at 391 Jericho Turnpike, Syosset, NY 11791.

13. He was working his usual shift that day.

14. The agents did not come in looking for anybody specifically; they were just racially profiling the

    customers and the workers.

15. After the ICE agents entered the store, they surrounded the petitioner and demanded that he answer

    questions about his immigration status.

16. The ICE agents immediately demanded to know his immigration status and see his documents.

17. They then detained him, searched him, arrested him, and transported him to an ICE

    processing center.

18. ICE arrested him without 1) **a "reason to believe that he was removable" and that 2) he was "likely**

    **to escape before a warrant can be obtained,"** which are the *minimum* requisites under INA Section

    287 (a)( 2), 8 USC 1357 (a)(2) for a warrantless arrest by ICE.

19. ICE agents may have an arguable right to enter a store, remain in the public area of the store, but are not

    allowed to enter private areas of the store or interrogate people after they detain them in the store and

    arrest people without a warrant.

20. They did not apparently know the identities of the people or have the paperwork for any of the people

    who were later detained or arrested, including Petitioner and another worker at the business.

21. At no time did the ICE agents present a warrant for any of the persons that they interrogated, detained,

    and arrested until after the encounter.

22. The petitioner had not committed any crime and was only working at his job.

3

23. There was no probable cause to arrest him, nor was there any reasonable suspicion that he had committed a crime.

24. The ICE agents approached him essentially because he is Indian.

25. The reason he was targeted, approached, and accosted was because of his ethnic and national origin as an Indian; there is no other articulable reason.

26. When ICE agents later fingerprinted him and booked him at the DHS processing offices, they did not follow statutorily and constitutionally guaranteed procedures designed to ensure Petitioner's due process, as explained below.

27. During or after his arrest, he was not permitted to make any phone calls, and he did not even know where he was being taken.

## THE IMMIGRATION HISTORY

28. Petitioner had been the beneficiary of an asylum application timely filed with USCIS but erroneously dismissed by the immigration court.

29. The asylum is still pending before the USCIS. *See Exhibit Asylum documents.*

30. He entered the U.S. through the southern border on December 9th, 2021, and has lived in Long Island since his arrival.

31. Petitioner has no criminal record.

32. He is a refugee who came to the United States, fleeing persecution in his native India, and immediately filed for asylum and had a pending application and process with the USCIS.

33. Petitioner resides at 4 Lawnside Drive, Hicksville, NY 11801.

34. On July 7th, 2022, USCIS conducted a biometrics appointment for him at the Varick Street USCIS location in Manhattan, where they collected his fingerprints, photos, and biometrics, pursuant to his asylum application. See the attached Exhibit Asylum documents attached herein.

35. DHS had released him upon his entry into the U.S. at the border.

36. When he was initially arrested at the border, he was given a list of conditions for his release under the Order of Release. *See Order of Release on Reconnaissance attached as an exhibit here.*

37. Upon entering the United States, he was processed through the Chaparral, New Mexico processing center.

   *See attached Exhibit "Notice of Custody Determination."*

38. DHS released him pursuant to the Order of Release on Recognizance on December 9th, 2021, and the case was transferred to 26 Federal Plaza for him to appear in NYC.

39. He was ordered to participate locally at the Alternatives to Detention (ATD) program. *See Exhibit Custody Determination documents attached herein.*

40. For almost five years, starting on December 10, 2021, until February 18, 2026, when he was arrested by ICE in Syosset, Long Island, he was complying with all of the requirements included in the Order of Release on Reconnaissance and the Alternative to the Detention Program from his home in Long Island under the supervision of ICE office located at 26 Federal Plaza, Manhattan.

41. He had been dutifully fulfilling all his obligations with ICE and the Immigration Court, as mandated, and attending all his ICE check-ins. *A copy of his ICE Check-In Sheet, the I-220-A is attached.*

42. He had violated no conditions of release.

43. He entered the U.S. through the southern border on December 9th, 2021, and has lived in Long Island since his arrival.

44. On the date of his re-arrest last week, five years later, in Long Island, the ICE agents did not present a warrant because none existed, nor did they have probable cause to arrest him. They did not know him from Adam.

45. ICE agents presented no Revocation of Release on Recognizance, Form I-813, before the arrest.

46. That form is required under the INA detention implementing regulations when a noncitizen has been released on their own recognizance, and ICE seeks to revoke their custody status or change their liberty conditions.

47. The Form I-813 and the revocation protocol are required by the detention statutes and by constitutional due process requirements.

48. A perusal of an I-813 Revocation of Order of Release is in order. The form has a box at the bottom of the questions that states: *"I hereby cancel this order removal because the alien failed to comply with*

*the conditions of release,*" and further specifies, *"The alien was taken into custody for removal.*

49. The form then requires the signature of the ICE official canceling the order of reconnaissance. That form is without doubt missing from this case.

50. As proven below, the form and the deliberation process it mandates were required **before** the petitioner was arrested at his place of employment.

51. The Order of Release is, in fact, a lawful DHS order to release the non-citizen issued under federal law under a specific legal protocol.

52. The legal significance of the order, which was issued on December 9, 2021, in Chaparral, New Mexico, cannot be nilly-willy ripped up by New York ICE agents at a smoke shop in Long Island five years later, who are trying to meet the day's arrest quotas.

53. The Release Order cannot be revoked unless there is proof of significant violations of his conditions of release: here, there are none.

54. Further, ICE at the time of re-arrest, also conducted no meaningful individualized custodial determination or custody review before or contemporaneously with Petitioner's arrest, as required by law.

55. Petitioner was given no prior notice that he would be arrested, no opportunity to be heard on ICE's decision to detain him, and he was not afforded due process.

56. To add insult to injury, DHS's novel policy -overruling decades of established precedent- says he is not entitled to any hearing whatsoever and could be held in jail for months or years if he decides to appeal his case.

57. DHS is now incarcerating him indefinitely without an individualized custody determination as required by the Fourth Amendment, the Due Process Clause of the Fifth Amendment, and the governing detention statutes and regulations.

58. To date, he has been illegally detained and is still at Delaney Hall, Newark, NJ.

59. That is why Petitioner now comes to this Honorable Court seeking assistance.

**INTRODUCTION**

60. Petitioner respectfully submits this emergency petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the legality of his arrest and continued detention by Respondents.

61. Because Petitioner is presently in federal immigration custody and subject to transfer at any time, immediate judicial intervention is necessary to preserve this Court's jurisdiction and ensure meaningful review of the legality of detention.

62. Pursuant to 28 U.S.C. § 2243, Petitioner respectfully requests that the Court issue an Order to Show Cause directing Respondents to demonstrate why the writ should not be granted and to certify the true cause of Petitioner's detention. Section 2243 contemplates prompt judicial inquiry into executive restraint and requires the custodian to file a return setting forth the statutory and factual basis for confinement.

63. Accordingly, Petitioner respectfully requests that this Court issue an Order to Show Cause pursuant to 28 U.S.C. § 2243 directing Respondents to show cause why a Temporary Restraining Order should not remain in effect pending adjudication of the habeas petition that would:

   a) Prohibit Respondents from transferring Petitioner outside the DISTRICT OF NEW JERSEY or the SDNY and EDNY, absent further order of this Court;

   b) Direct Respondents to provide reasonable and timely access to counsel, including meaningful and confidential in-person legal visitation;

   c) Direct Respondents to file, within forty-eight (48) hours, a full return certifying the statutory and factual basis for detention pursuant to 28 U.S.C. § 2243;

   d) Require production, within forty-eight (48) hours of this Order, of all custodial and administrative documents supporting detention, including but not limited to any Form I-200 warrant, custody determination records, charging documents, documentation reflecting the asserted statutory detention authority, and the complete Department of Homeland Security administrative file ("A-File"), as well as all DHS and ICE custody, detention, and administrative records relating to Petitioner, with appropriate relief for noncompliance;

e) Order Respondents to produce Petitioner forthwith before this Court as necessary to effectuate meaningful habeas review; Upon adjudication of the Petition, grant the writ of habeas corpus and order Petitioner's immediate release from unlawful detention;

f) In the alternative, order Respondents to conduct a lawful, contemporaneous custody determination within twenty-four (24) to forty-eight (48) hours, supported by documentation demonstrating lawful arrest authority and individualized deliberation consistent with statutory and constitutional requirements;

g) Award reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), should Petitioner prevail in this action; and

h) Grant such other and further relief as this Court deems just and proper.

## THE LEGAL ISSUE PRESENTED IN THIS PETITION HAS ALREADY BEEN DECIDED BY THE JUDGES IN THE DISTRICT OF NEW JERSEY.

64. In this Petition, we will highlight cases in the DISTRICT OF NEW JERSEY that support the propositions we advance in favor of Petitioner's immediate release. Because most of our habeas experience is in the Southern and Eastern Districts of New York, we also cite cases from those districts as persuasive authority supporting Petitioners' arguments, especially their arguments for release, since we believe immediate release is the appropriate remedy here.

### DISTRICT OF NEW JERSEY AUTHORITY SUPPORTS IMMEDIATE RELEASE— RATHER THAN A BOND HEARING—WHERE DHS MISAPPLIES § 1225(b)(2) IN INTERIOR ARREST CASES

65. During 2025 and 2026, the District of New Jersey developed a consistent and forceful body of habeas jurisprudence addressing interior ICE arrests, warrantless detentions, and the Government's expanded reliance on 8 U.S.C. § 1225(b)(2) to impose categorical, "discretion-free" detention. These decisions do not treat misclassification under § 1225(b)(2) as a minor statutory disagreement. Rather, they recognize that when § 1225(b)(2) is invoked against noncitizens who are not seeking admission but are instead long-present residents arrested within the interior of the United States, detention is ultra vires. When that misclassification is coupled

with the denial of contemporaneous individualized custody review, courts in this District have

ordered immediate release and, in multiple cases, have enjoined re-detention under the same

statutory theory.

66. The doctrinal foundation of this line of authority begins with the statutory text itself. Section

1225(b)(2)(A) applies only to individuals "seeking admission." The District of New Jersey has

repeatedly emphasized that this phrase carries operative force and cannot be read out of the

statute. In *Zumba v. Bondi*, No. 25-14626 (KSH), 2025 WL 2753496 (D.N.J. Sept. 26, 2025),

the petitioner had lived in the United States for more than twenty years before being arrested

within the interior and detained under § 1225(b)(2). The court held that the statute's plain

language foreclosed the Government's position. As the court explained, "Section 1225(b)(2)(A)

applies to an alien who is 'seeking admission' into the United States. Petitioner, who has resided

in the United States for over twenty years and was arrested within the interior, was not seeking

admission at the time of her arrest." *Zumba*, 2025 WL 2753496, at 8. The court rejected DHS's

categorical theory, explaining that it "would effectively read the 'seeking admission'

requirement out of the statute," a construction incompatible with the INA's text and structure.

Id. at 8–9.

67. Having determined that § 1225(b)(2) did not apply, the court held that § 1226(a)—which

preserves discretionary custody review and bond authority—governs detention of long-present

individuals arrested in the interior. Id. at 9. The remedy followed inexorably from that statutory

conclusion. The court held, "Because Petitioner's detention under § 1225(b)(2) is

not authorized by the statute and deprives her of the bond process Congress preserved under §

1226(a), her continued detention violates the Immigration and Nationality Act and the Due

Process Clause." Id. at 11. The writ was granted, release was ordered within twenty-four hours,

and re-detention under § 1225 was permanently enjoined to ensure the writ's effectiveness.

68. This reasoning was reaffirmed in *Bethancourt Soto v. Soto*, No. 25-16200, 2025 WL 2976572

(D.N.J. Oct. 22, 2025). There, the court again rejected the Government's attempt to classify a

long-present interior arrestee under § 1225(b)(2), holding, "The plain text of § 1225(b)(2)(A) limits its application to aliens who are 'seeking admission.' Petitioner was apprehended inside the United States and was not seeking admission at a port of entry. Accordingly, § 1225(b)(2) does not govern his detention." Id. at 6. The court emphasized the structural deprivation that followed from misclassification, explaining that "[b]y classifying Petitioner under § 1225(b)(2), Respondents have deprived him of the discretionary custody determination and bond review Congress expressly provided under § 1226(a)." Id. at 8. It concluded that such detention was "inconsistent with the statutory scheme and raises serious due process concerns." *Id.* at 8–9.

69. The same principle was reinforced in *Villacorta Perlera v. Tsoukaris*, No. 2:25-cv-17122 (D.N.J. Jan. 23, 2026), where the court again held that § 1226(a), not § 1225(b)(2), governs detention of interior arrestees and granted habeas relief.

70. The symmetry of this jurisprudence continued in *Contreras Maldonado v. Cabezas,* No. 25-13004 (JKS), 2025 WL 2985256 (D.N.J. Oct. 23, 2025), where the court reiterated, "Section 1225(b)(2) cannot be used to impose mandatory detention on individuals who were not seeking admission at the time of their apprehension. Petitioner was arrested within the United States and therefore falls within the framework of § 1226(a), not § 1225(b)(2)." Id. at 5. The court underscored the structural nature of the defect, holding that "Detention under an inapplicable statutory provision deprives Petitioner of the discretionary bond determination Congress preserved. Such detention is inconsistent with the INA and cannot be sustained." Id. at 6. As in Zumba, release was ordered within twenty-four hours, and re-detention under § 1225 was enjoined. Id. at 7.

71. In *Penaloza Penalosa v. Bondi*, No. 25-18843 (JKS) (D.N.J. Jan. 23, 2026), the court confronted not only statutory misclassification but also serious front-end procedural deficiencies arising from a warrantless arrest and the denial of meaningful access to counsel and individualized review. In granting the writ, the court held, "Petitioner's detention pursuant to § 1225(b)(2), combined with the absence of meaningful access to counsel and individualized custody review,

renders his continued detention unlawful." *Slip op.* at 9. The court further explained, "A bond hearing conducted after detention imposed under an inapplicable statutory provision does not cure the illegality of that detention." *Id.* at 10. Release was ordered, re-detention under § 1225 was enjoined, and the court retained jurisdiction to prevent recurrence.

72. Just last week, in undersigned counsel's case, with facts very similar to Petitioner's here, *Jagpreet Singh v. Tsoukaris*, *26-cv-01531*, Judge O'Hearn, immediately released the habeas Petitioner ruling that:

> WHEREAS, **the basis for the Petitioner's continued "detention [was] blatantly unlawful from the start, the only commensurate and appropriate equitable remedy to even partially restore [Petitioner] is to immediate[ly] release him and enjoin the Government from further similar transgressions,**" *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 366, 371–73 (S.D.N.Y. 2019) ("[T]he Supreme Court has repeatedly upheld prisoners' rights to challenge the constitutionality of their detentions, and allow[ed] courts to implement corrective remedies, regardless of whether there were other bases for the petitioners to be subsequently detained."); the Court declines to allow Respondents to transform an unlawful detention into a lawful one through alternative, retrospective, post hoc justification presented mid-litigation, as doing so would give the Government a free pass to violate a person's statutory and constitutional rights first and search for authority later, see, e.g., *Lopez-Campos v. Raycraft*, No. 25-12486, 2025 WL 2496379, at *7 & n.4 (E.D. Mich. Aug. 29, 2025) (citing cases) ("The Court cannot credit this new position that was adopted post-hoc, despite clear indication that Lopez-Campos was not detained under this provision."); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025) (releasing petitioner and explaining that the court "cannot credit Respondents' new position as to the basis for . . . detention, which was adopted post hoc and raised for the first time in this litigation"); *Arias Gudino v. Lowe*, 785 F. Supp. 3d 27, 46 n.8 (M.D. Pa. 2025) (releasing petitioner and discussing the impropriety of allowing the government to proceed on "post hoc justifications for detention"); cf. *Marshall v. Lansing*, 839 F.2d 933, 943–44 (3d Cir. 1988) ("[W]hen reviewing an administrative agency's decision, a court is generally not seeking some hypothetical rational support for the agency's action. **A court must review the agency's actual on-the-record reasoning process . . . not a post hoc rationalization, or agency counsel's in-court reasoning.**"); therefore IT IS, on this 19th day of February, 2026, ORDERED that Petitioner's § 2241… Respondents shall on this date IMMEDIATELY RETURN PETITIONER TO NEW JERSEY AND IMMEDIATELY RELEASE Petitioner under the same conditions, if any, that existed prior to his redentention. *Jagpreet Singh v. Tsoukaris*, *26-cv-01531-CPO*, slip op. (D.NJ., February 12, 2026) (emphasis supplied).

73. These District of New Jersey decisions are firmly grounded in Supreme Court doctrine governing executive detention and habeas relief. In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Court declared that "[f]reedom from imprisonment—from government custody, detention, or

other forms of physical restraint—lies at the heart of the liberty that the Due Process Clause

protects." Id. at 690. The Court further emphasized that "[t]he writ of habeas corpus is the

fundamental instrument for safeguarding individual freedom against arbitrary and lawless state

action." Id. at 687. Where detention exceeds statutory authorization, habeas courts must order

release. Id. at 699–700.

74. In *Demore v. Kim*, 538 U.S. 510 (2003), the Court reaffirmed that § 2241 proceedings "remain

available as a forum for statutory and constitutional challenges to detention." *Id.* at 516–17. And

in *Jennings v. Rodriguez*, 583 U.S. 513 (2018), the Court underscored that "[w]hether a statutory

provision authorizes detention must be determined by reference to the language of the statute

itself." Id. at 524. The District of New Jersey's decisions follow precisely that command,

interpreting § 1225(b)(2) according to its text and refusing to expand it beyond the "seeking

admission" limitation.

75. Third Circuit precedent completes this constitutional arc. In *Diop v. ICE/Homeland Sec.*, 656

F.3d 221 (3d Cir. 2011), the court held that executive detention becomes unconstitutional when

it is not meaningfully justified, explaining that "[a]t a certain point, continued detention becomes

unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional

unless the Government has justified its actions at a hearing." Id. at 233. In *Guerrero-Sanchez v.

Warden York County Prison*, 905 F.3d 208 (3d Cir. 2018), the court held that due process

demands an individualized bond hearing at which the Government bears the burden of justifying

continued detention, stating, "The Due Process Clause demands a hearing, at which the

Government bears the burden of proving that continued detention is necessary to fulfill the

purposes of the detention statute." Id. at 224. The court emphasized that "[c]ivil detention must

be accompanied by adequate procedural protections to ensure that the Government's asserted

justification for physical confinement outweighs the individual's constitutionally protected

interest in avoiding physical restraint." Id. at 223.

76. The persuasive authority emerging from the Southern and Eastern Districts of New York

reinforces this conclusion. In *Lopez Benitez v. Francis*, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025), the court granted habeas relief. In *Gonzalez v. Joyce*, 2025 WL 2961626 (S.D.N.Y. Oct. 19, 2025), the court described courthouse-arrest detention as "arbitrary detention" with "no process at all." In *Samb v. Joyce*, 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025), the court condemned "seemingly random and arbitrary detentions." In *Barco Mercado v. Francis,* 2025 WL 3295903 (S.D.N.Y. Nov. 26, 2025), the court emphasized that release may be necessary to render habeas relief effective.

77. The Eastern District of New York reached the same conclusion in *Hyppolite v. Noem,* No. 25 Civ. 4303 (E.D.N.Y. Oct. 6, 2025), as well as in *Gopie v. Lyons*, No. 25 Civ. 5229 (E.D.N.Y. Nov. 14, 2025), and *Pesantez Castro v. Maldonado*, No. 25 Civ. 6844 (E.D.N.Y. Dec. 23, 2025).

78. Taken together, the doctrinal arc is complete. Under the plain text of § 1225(b)(2), the repeated holdings of the District of New Jersey, Supreme Court habeas doctrine, binding Third Circuit due process precedent, and persuasive SDNY and EDNY authority, detention of long-present interior arrestees under § 1225(b)(2) is ultra vires, structurally defective, and constitutionally infirm. The proper remedy—consistently ordered in this District—is immediate release, not remand for bond.

## THE LEGAL FRAMEWORK

79. The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings. First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in standard removal proceedings before an IJ. See 8 U.S.C. § 1229a. Individuals in §1226(a) detention are generally entitled to a bond hearing at the outset of their detention, see 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, see 8 U.S.C. § 1226(c). Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under § 1225(b)(2).

80. Third, the INA also provides for detention of noncitizens who have been ordered removed, see 8 U.S.C. §1231(a)–(b). This case concerns the detention provisions at §§ 1226(a) and 1225(b)(2). The detention

provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and

Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-–208, Div. C, §§ 302–03, 110 Stat. 3009-

546, 3009–582 to 3009–583, 3009–585. Section 1226(a) was most recently amended earlier this year by the

*Laken Riley Act*, Pub. L. No.119-1, 139 Stat. 3 (2025). Following the enactment of the IIRIRA, EOIR drafted

new regulations explaining that, in general, people who entered the country without inspection were not

considered detained under § 1225 and that they were instead detained under § 1226(a). See *Inspection and*

*Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum*

*Procedures,* 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997) (explaining that "[d]espite being applicants for

admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as

aliens who entered without inspection) will be eligible for bond and bond redetermination."). Thus, in the

decades that followed, most people who entered without inspection and were placed in standard removal

proceedings received bond hearings, unless their criminal history rendered them ineligible. That practice was

consistent with many more decades of prior practice, in which noncitizens who were not deemed "arriving"

were entitled to a custody hearing before an IJ or other hearing officer. See 8 U.S.C. § 1252(a) (1994); see

also H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention

authority previously found at § 1252(a)).

81. However, on July 8, 2025, ICE, "in coordination with" DOJ, announced a new policy that rejected well-

established understanding of the statutory framework and reversed decades of practice. The new policy,

entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," claims that all

persons who entered the United States without inspection are subject to the mandatory detention provision

under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended and affects those who

have resided in the United States for months, years, and even decades.

82. The BIA has since adopted that position in a precedential decision, *Matter of Yajure Hurtado*, 29 I&N

Dec. 216 (BIA 2025). This decision mandates the detention, without a bond hearing in immigration court,

of millions of noncitizens who have lived in the United States for years following their entry without

inspection.

83. ICE and EOIR have adopted this position even though federal courts have rejected this exact conclusion. For example, after IJs in the Tacoma, Washington, immigration court stopped providing bond hearings for persons who entered the United States without inspection and who have since resided here, the U.S. District Court in the Western District of Washington found that such a reading of the INA is likely unlawful and that § 1226(a), not § 1225(b), applies to noncitizens who are not apprehended upon arrival to the United States. *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. Apr. 24, 2025).

**Starting in 2025: The Curtailment of the Immigration Bond System and Habeas Relief**

84. In 2025 and 2026, the operation of the immigration detention framework changed significantly. Reporting from national media outlets, federal court decisions, and publicly available immigration court data indicate that bond hearings—historically the principal mechanism for individualized custody review—have been limited or withheld for substantial categories of detainees. These developments raise concerns not only about statutory interpretation but also about the continued availability of meaningful procedural safeguards against prolonged executive detention.

85. In July 2025, Immigration and Customs Enforcement adopted a revised interpretation of the detention statutes, asserting that many individuals who entered without inspection should be treated as "applicants for admission" and therefore subject to mandatory detention without access to bond hearings. See Nick Miroff, *ICE Declares Millions of Undocumented Immigrants Ineligible for Bond Hearings*, Wash. Post (July 14, 2025).

86. Reporting described this reinterpretation as affecting individuals who previously would have been considered eligible for custody redetermination under 8 U.S.C. § 1226(a). Practitioners reported that immigration courts in multiple jurisdictions, including New York, declined to schedule bond hearings in cases where such hearings previously would have been available.

87. Subsequent reporting suggested that this shift was implemented broadly. **Bloomberg Law reported that**

15

**immigration courts had largely ceased conducting bond hearings notwithstanding district court rulings recognizing detainees' entitlement to individualized custody determinations.** See Sabrina Rodriguez, *Bond Hearings for Immigrants Cease Despite Federal Rulings*, Bloomberg Law (2025). **Reuters reported that the Chief Immigration Judge issued internal guidance advising immigration judges to deny bond hearings despite adverse federal court decisions, taking the position that district court rulings were not binding absent injunctive relief.** See Kristina Cooke, *Top U.S. Immigration Judge Says Bond Hearings Should Be Denied Despite Court Rulings*, Reuters (Jan. 16, 2026). **A separate Reuters report noted that a federal judge expressed concern regarding noncompliance with rulings requiring bond hearings.** See Kristina Cooke, *U.S. Judge "Worried" About Immigration Courts Not Complying with Rulings Requiring Bond Hearings*, Reuters (Jan. 20, 2026).

88. At the same time, the Board of Immigration Appeals issued precedential decisions narrowing immigration judges' authority to conduct bond hearings for individuals categorized as "applicants for admission." See American Immigration Lawyers Association, *BIA's Decision Ignores Decades of Precedent Stripping Immigration Judges of Bond Authority* (2025). Litigation followed, and at least one federal court certified a nationwide class and vacated the underlying no-bond memorandum. See ACLU, *Federal Court Affirms Nationwide Class Has Right to Bond Hearings* (2025). These developments reflect ongoing judicial disagreement regarding the scope of detention authority, but they also indicate that access to bond hearings has been materially constrained.

89. Empirical data provide additional context. The Transactional Records Access Clearinghouse("TRAC") reported fluctuations in bond filings and outcomes during 2025. See TRAC Immigration, *Increasing Success with Bond Motions in Immigration Court* (July 16, 2025). Earlier in that year, bond grants increased and median bond amounts declined, reflecting the availability of individualized custody review. The subsequent curtailment of bond hearings therefore marked a notable departure from prior practice.

90. Reporting during the same period also described institutional disruption within EOIR, including the removal or non-retention of numerous immigration judges. See NEPM, ***The Trump Administration Fired***

*Nearly 100 Immigration Judges in 2025—What's Next?* (Jan. 10, 2026); Eric Katz, **"Climate of Fear':** *Immigration Judges Say Functioning of Their Court System Jeopardized Due to Firings,*" Gov't Executive (Nov. 2025). While such reports do not establish causation with respect to particular bond decisions, they provide context for understanding the institutional environment in which custody determinations have occurred.

91. The cumulative effect of these developments is that the availability of bond hearings cannot be assumed. Where immigration judges are directed to deny hearings or are deemed to lack jurisdiction to consider release, detainees may be left without an effective administrative mechanism to obtain individualized custody review.

92. The Due Process Clause prohibits arbitrary detention and requires meaningful procedural safeguards. Although *Jennings v. Rodriguez* held that certain detention statutes do not contain implicit statutory requirements for periodic bond hearings, it did not foreclose constitutional challenges where detention becomes prolonged without adequate process, nor did it authorize executive officials to disregard federal court determinations regarding custody rights.

93. In these circumstances, habeas corpus serves its traditional role. When the administrative bond process is curtailed or rendered ineffective by policy or jurisdictional interpretation, federal courts are not required to assume that administrative remedies will cure a constitutional violation. If a Petitioner establishes that detention is ultra vires, constitutionally defective, or prolonged without meaningful review, reliance on the bond system may be insufficient to vindicate constitutional protections. In such cases, relief in the form of release, or at minimum a constitutionally adequate custody hearing ordered by this Court, falls within the traditional scope of habeas corpus.

### The Executive-Branch Structure of the Immigration Court System Counsels Against Presuming the Bond Process Is an Adequate Constitutional Safeguard

94. Immigration judges are not Article III judges. They serve within the Executive Office for Immigration Review ("EOIR"), a component of the Department of Justice. Congress's research arm has noted that immigration courts are not part of the federal judiciary but function as an administrative adjudicatory

system housed within DOJ. See Cong. Rsch. Serv., *The Immigration Court System* (R47077). EOIR's structure reflects a supervisory hierarchy in which the EOIR Director and the Chief Immigration Judge oversee court operations nationwide. Immigration judges are appointed through an internal executive-branch process and do not possess life tenure or salary protection.

95. This institutional placement bears on the remedial inquiry. Immigration judges adjudicate removal and custody matters while remaining employees of the same executive branch responsible for immigration enforcement. Unlike Administrative Law Judges who enjoy statutory protections under the Administrative Procedure Act, immigration judges historically have not had comparable  structural insulation from agency management. Public reporting and scholarship have observed that immigration courts operate within a framework that includes performance expectations and case-management directives issued by DOJ leadership. See TRAC Immigration, *Immigration Judges: Less Independence Than Other Administrative Judges* (2025); Brennan Center for Justice, *The Immigration Court System Explained* (2025).

96. The Attorney General retains supervisory authority over EOIR and may influence policy and operational priorities across the system. EOIR has publicly emphasized case-completion milestones and backlog reduction efforts. See *U.S. Dep't of Justice, EOIR Announces Significant Immigration Court Milestones (2025)*. Administrative oversight of this kind is not improper in itself. It does, however, distinguish immigration adjudication from Article III decision-making, which is constitutionally insulated from executive supervision.

97. Recent personnel developments underscore that immigration judges serve within a conventional executive chain of command. Reporting in 2025 and 2026 described the removal or non-retention of significant numbers of immigration judges and characterized the resulting environment as unsettled. See Kristina Cooke, *Trump Administration Fires Numerous New York Immigration Judges, Reuters (Dec. 2, 2025).* The Court need not draw conclusions about subjective motivations. It is sufficient to recognize that immigration judges operate within an executive personnel system.

98. These structural features do not establish bias in any individual case. They do, however, inform whether

the administrative bond process can be presumed to function as a fully independent safeguard against unconstitutional detention—particularly where internal guidance has limited bond hearings for certain categories of detainees. In such a setting, habeas review serves its traditional role as an external constitutional check on executive custody.

### Structural Limitations in the Bond System Inform the Appropriate Habeas Remedy

99. The foregoing considerations bear directly on remedy. Where detention is unlawful—because it is ultra vires, the product of a constitutional violation, or prolonged without adequate process—the ordinary function of habeas corpus is to provide effective relief. The Government may contend that any defect can be addressed through remand to the immigration court for a bond hearing. The record, however, reflects that bond hearings have in some instances been curtailed or restricted by executive policy and internal directives. Remand to the same administrative framework does not necessarily ensure prompt or meaningful review.

100. Moreover, even where bond hearings remain available in form, the Court is not required to treat the administrative process as an automatic substitute for constitutional adjudication. Immigration judges remain executive-branch employees subject to agency supervision. They lack the structural independence of Article III judges. That reality does not impugn individual adjudicators; it simply underscores that habeas corpus exists precisely to provide an independent judicial forum when liberty is at stake.

101. The Supreme Court and the Second Circuit have long recognized that § 2241 authorizes federal courts to order release where detention exceeds statutory or constitutional limits. See *Demore v. Kim*, 538 U.S. 510, 517 (2003); *Henderson v. INS*, 157 F.3d 106, 122 (2d Cir. 1998); *Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003). Where detention is unlawful, release is a conventional habeas remedy.

102. If the Court concludes that Petitioner's custody is ultra vires or constitutionally defective, it need not assume that further administrative proceedings will cure the defect. The Suspension Clause ensures that habeas review remains meaningful. Requiring a detainee to return to an administrative process that has been materially limited in its ability to provide custody review would not necessarily vindicate

constitutional protections. In such circumstances, immediate release, or release on reasonable conditions imposed by this Court, may be the appropriate remedy

### The Emerging Habeas Consensus on Widespread Mandatory ICE Detention

103. The federal courts in the Southern and Eastern Districts of New York in 2025 and 2026 developed a consistent and increasingly explicit body of habeas jurisprudence addressing ICE detention premised on categorical § 1225(b)(2) theories, interior arrests of long-present noncitizens, and the absence of contemporaneous individualized custody review. Across decisions, courts have treated these defects not as technical irregularities, but as statutory violations with constitutional consequences requiring immediate judicial intervention. Courts repeatedly granted the writ and ordered release where detention lacked statutory authority or was imposed without the individualized procedural safeguards required by due process. In *Diallo v. Joyce*, No. 25-CV-9909 (AS), slip op. at 1 (S.D.N.Y. Dec. 23, 2025), Judge Subramanian granted habeas relief and ordered release where ICE detained a long-time New York resident without a valid statutory basis and without constitutionally adequate process, emphasizing the illegality of the detention in unequivocal terms: **"None of this had to happen. All of it is illegal."**

104. Similarly, in *Gonzalez v. Joyce*, No. 25 Civ. 8250 (AT), 2025 WL 2961626, at *2–4 (S.D.N.Y. Oct. 19, 2025), Judge Torres granted the writ and ordered release where courthouse arrests operated as "arbitrary detention" with "no process at all," and where the record reflected no individualized assessment of dangerousness or flight risk. The court treated the absence of individualized process as constitutionally dispositive.

105. Judge Engelmaier reached the same conclusion in *Funes Gamez v. Francis*, No. 25 Civ. 7429 (PAE), slip op. at 43, 48–49 (S.D.N.Y. Nov. 24, 2025), ordering forthwith release after ICE revoked a prior order of supervision without providing notice or a prompt interview. The court held that failure to comply with mandatory procedural safeguards rendered the petitioner "in custody in violation of the Constitution," grounding relief in the Due Process Clause.

106. These decisions align with a broader SDNY line recognizing that detention imposed without statutory authorization or without contemporaneous process *warrants release*. See, e.g., *Valdez v. Joyce*, No. 25 Civ.

4627 (GBD), 2025 WL 1707737 (S.D.N.Y. June 18, 2025); *Chipantiza-Sisalema v. Francis*, No. 25 Civ. 5528, 2025 WL 1927931 (S.D.N.Y. July 13, 2025); *Lopez Benitez v. Francis*, No. 25 Civ. 5937, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Samb v. Joyce*, No. 25 Civ. 6373, 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025).

107. The Eastern District has issued parallel rulings. In *Pessantez Castro v. Maldonado*, No. 25-CV-6844 (JMA), slip op. at 2 (E.D.N.Y. Dec. 23, 2025), the court ordered immediate release, specifically noting the absence of contemporaneous service of charging documents and the lack of an individualized custody determination. See also *Gopie v. Lyons,* No. 25-CV-5229, 2025 WL 3167130 (E.D.N.Y. Nov. 13, 2025).

108. Across these cases, the unifying principle is clear: detention unsupported by proper statutory authority and unaccompanied by individualized procedural safeguards is unlawful and immediately remediable in habeas.

## **Rejection of Categorical § 1225(b)(2) Detention for Interior Arrests**

109. In September 2025, the Board issued *Matter of Yajure-Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025), concluding that certain individuals alleged to be "applicants for admission" were subject to § 1225(b)(2) and outside immigration judges' bond jurisdiction. That decision became central to DHS's categorical detention arguments in subsequent habeas litigation.

110. New York federal courts, however, repeatedly held that long-present noncitizens arrested in the interior are properly detained, if at all, under 8 U.S.C. § 1226(a)—not § 1225(b)(2)—and that due process requires the discretionary, individualized review mechanisms Congress preserved in § 1226(a).

111. The most frequently cited decision articulating this statutory and constitutional framework is *Barco Mercado v. Francis[1]* 2025 WL 3295903, at 12–14 (S.D.N.Y. 2025), which collected authority and explained why applying a "discretion-free" § 1225 regime to long-present residents conflicts with both the statutory structure and due process. Following *v Mercado*, multiple SDNY decisions held that detention "pursuant to the wrong statute" is unlawful because it strips detainees of the procedural protections Congress and the Constitution require. See, e.g., *Yao v. Almodovar*, No. 25-CV-9982 (PAE), 2025 WL

[1] See Appendices A & B cited by Judge Kaplan in *Barco Mercado v. Francis*, No. 1:25-cv-06582 (2025 WL (S.D.N.Y., Nov. 26, 2025) of a running tally in November 2025 of granted and denied habeas petitions based on DHS and ICE violations. A conservative estimate today is over 630 immigration habeas granted in 2025 to 2026.

3653433, at 7–8, 11–12 (S.D.N.Y. Dec. 17, 2025); *M.K. v. Arteta*, No. 25-CV-9918 (LAK),2025

WL 3720779, at *8–9 (S.D.N.Y. Dec. 23, 2025).

112. This body of law reflects a consistent judicial determination: § 1225(b)(2) does not authorize

discretion-free detention of long-present individuals arrested in the interior, and when invoked in that

posture, detention is unlawful.

### The Appropriate Remedy Generally : Bond Hearing or Immediate Release

113. Where courts concluded that § 1226(a) governs, many ordered prompt bond hearings with

constitutionally adequate safeguards. See Jimenez Garcia v. Joyce, No. 26 Civ. 429 (AS), 2026 WL251889

(S.D.N.Y. Jan. 30, 2026). In other cases—particularly where the constitutional defect consisted of the

complete absence of individualized process under a categorical "mandatory detention" theory—courts

ordered immediate release. See *Huang v. Almodovar,* No. 26-CV-551 (S.D.N.Y. 2026).

114. The Eastern District has likewise required meaningful procedural safeguards at the front end of detention

authority. In *Hyppolite v. Noem (*E.D.N.Y. 2025), the court granted habeas and ordered release, and

subsequent EDNY rulings have cited *Hyppolite* in rejecting § 1225(b)(2) detention of long-present

individuals without § 1226(a) safeguards.

115. Further, in *Ambroladze v. Maldonado*, No. 26-CV-473 (E.D.N.Y. 2026), the court held that due process

may require notice and a pre-deprivation hearing before re-detention under § 1226(a), placing the burden on

the Government to justify renewed custody.

### Immediate Release - Not a Bond Hearing - Is the Proper Habeas Remedy Here

116. When detention is unauthorized under the governing statute, it is ultra vires. Habeas has historically

provided release—not advisory correction—when custody exceeds statutory authority. See *Demore v.

Kim,* 538 U.S. 510, 516–17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).  As Chief Justice

Roberts wrote in *Munaf v. Geren*, 553 U.S. 674, 693 (2008), the typical remedy for unlawful executive

detention is release. Habeas is at its core a remedy for unlawful executive detention. *Hamdi v. Rumsfeld*,

536 542 U.S. 507, 536 (2004) (plurality opinion). ***The typical remedy for such detention is, of course,

release.*** See, e.g., *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he traditional function of the writ

is to secure release from illegal custody"). *Id* at 693. (bold added).

117.    New York courts have repeatedly recognized that rule and ordered release in these cases. See *Huang v. Almodovar*, No. 26-CV-551 (S.D.N.Y. 2026); *Diallo v. Joyce*, No. 25-CV-9909 (AS), slip op. at 1 (S.D.N.Y. Dec. 23, 2025); *Gonzalez v. Joyce,* No. 25 Civ. 8250 (AT), 2025 WL 2961626, at *2–4(S.D.N.Y. Oct. 19, 2025). See also *Barco Mercado v. Francis*, 2025 WL 3295903, at *12–14 (S.D.N.Y. 2025); *Yao v. Almodovar*, No. 25-CV-9982 (PAE), 2025 WL 3653433, at *7–8, *11–12 (S.D.N.Y. Dec.17, 2025); *M.K. v. Arteta*, No. 25-CV-9918 (LAK), 2025 WL 3720779, at *8–9 (S.D.N.Y. Dec. 23,2025); *Funes Gamez v. Francis*, No. 25 Civ. 7429 (PAE), slip op. at 43, 48–49 (S.D.N.Y. Nov. 24, 2025); *Hyppolite v. Noem* (E.D.N.Y. 2025); *Pessantez Castro v. Maldonado*, No. 25-CV-6844 (JMA), slip op. at 2 (E.D.N.Y. Dec. 23, 2025); *Gopie v. Lyons*, No. 25-CV-5229, 2025 WL 3167130 (E.D.N.Y.Nov. 13, 2025); *Ambroladze v. Maldonado*, No. 26-CV-473 (E.D.N.Y. 2026); *Henderson v. INS,* 157 F.3d 106, 122 (2d Cir. 1998).

### **THIS CASE**

118.    This is an emergency habeas case about a basic constitutional and statutory question*: **Can the Department of Homeland Security racially profile the Petitioner, an Indian man, because of his national origin, enter his place of employment, barrage him with questions involving his national origin,  detain, seize, search, and arrest him, without probable cause or a valid arrest warrant? And can they further detain him indefinitely without a hearing or in violation of statutory or constitutional safeguards?***

119.    As in many, DHS will undoubtedly produce an afterthought arrest warrant before this Court and claim it was a valid warrant that Petitioner was arrested on, even though it was created after he was arrested and was never previously issued or signed off by anyone in the chain of command at DHS, as is statutorily required - until after the arrest.

120.    The law says civil immigration detention is a profound deprivation of liberty, and due process demands meaningful safeguards *at the moment* the government chooses to arrest Petitioner.

121.    Courts in this District repeatedly grant habeas relief where ICE detains people without making the

individualized assessment that § 1226(a) and the implementing regulations require, and where ICE attempts to justify detention *after the fact rather than through contemporaneous process*. See, e.g., *Lopez Benitez v. Francis,* (granting habeas relief; explaining that due process must constrain the government's wide discretion to detain under § 1226(a)); *Barco Mercado v. Francis*; *Kelly v. Almodovar,* No. 25 Civ. 6448, 2025 WL 2381591 (S.D.N.Y. Aug. 15, 2025) (ordering immediate release where ICE's process was defective and stressing that post-hoc "re-determination" is not a substitute for initial deliberative custody decision); *Valdez v. Joyce,* No. 25 Civ. 4627, 2025 WL 1707737 (S.D.N.Y. June 18, 2025) (granting habeas; ordering immediate release in a re-detention/no-process scenario); *Chipantiza-Sisalema v. Francis; Gonzalez v. Joyce*, No. 25 Civ. 8250, 2025 WL 2961626 (S.D.N.Y. Oct. 19, 2025) (granting relief and ordering immediate release).

122. Petitioner therefore respectfully seeks immediate judicial intervention to prevent transfer, compel disclosure of vital documents, require production of the Petitioner before the Court, and order his immediate release.

## JURISDICTION AND VENUE

123. This Court has jurisdiction under 28 U.S.C. § 2241 because Petitioner is in federal custody under the color of United States authority and challenges the legality of that custody as unconstitutional and in violation of statute and regulation.

124. The venue is proper in the DISTRICT OF NEW JERSEY because the Petitioner was detained and processed at ICE facilities within this District, and is still currently at Delaney Hall, Newark. Respondents direct, control, and administer Petitioner's detention and transfer decisions in and from this District.

125. This Court has authority to issue a temporary restraining order and preliminary injunctive relief "as law and justice require," including to prevent transfer that would impair the Court's jurisdiction and ability to order effective habeas relief.

**THE PARTIES**

126.    Petitioner Fateh Singh, a resident of Hicksville, NY, CA.

127.    Respondent John Tsakouris is the New Jersey Field Director, Enforcement & Removal Operations

      of ICE, and is a legal custodian of Petitioner.

128.    Respondent Todd Lyons is the Acting Director of ICE and is responsible for ICE detention policies and

      practices.

129.    Respondent Kristi Noem  is  the Secretary  of the Department of Homeland Security  and  is responsible

      for DHS policies and enforcement practices affecting detention

130.    Respondent Pamela Bondi is the Attorney General of the United States and is sued in her official capacity

      in connection with the federal custody at issue.

131.    Respondent Luis Soto is the Warden of Delaney Hall, Newark, NJ sued in his official capacity because

      he is the Petitioner's immediate physical custodian.

**THE FACTS**

132.    **ICE recently arrested Petitioner at his workplace in Syosset, New York, without probable cause**

      **or a warrant while he was working.**

133.    **Petitioner had previously timely filed for asylum.**

134.    **The Petitioner has been dutifully complying with his immigration check-ins and court dates since**

      **December 9, 2021, without incident.**

135.    **The officers did not present a warrant and did not advise the Petitioner of his immigration rights.**

136.    **ICE officers, arrested Petitioner without notice, without probable cause, without a custody**

      **determination, without an evaluation of flight risk or dangerousness, without giving him an**

      **opportunity to be heard, all in violation of the INA and of his Fifth Amendment due process rights.**

137.    Upon information and belief, and as is current standard practice in many arrests by ICE, Petitioner

      was  detained without any meaningful opportunity to request release, and without any contemporaneous

      individualized custody determination as required by the detention statutes and implementing

      regulations.

138. Petitioner's warrantless arrest and continued detention are arbitrary and unlawful, effected without due process of law and in violation of the Fourth and Fifth Amendments and the immigration detention statutes and regulations.

139. Because of the statutory interpretation of recent Board of Immigration Appeals (BIA) decisions promulgated by this presidential administration, which denies immigration bond to people exactly like the Petitioner, ie., *the Matter of Yajure Hurtado*, the application for a bond hearing in this case is futile and nonsensical.

140. All immigration judges are bound by this BIA decision holding that the Petitioner is not entitled to a bond at the immigration court and they will categorically not hold a bond hearing.Because it is jurisdictionally impossible to obtain a bond through the immigration courts, due to this erroneous interpretation of federal law, as declared in the hundreds of Federal court decisions collected in this brief, the Petitioner is seeking relief from this Court.

## ARGUMENT

### Many Judges In This Circuit Have Released Noncitizens in Decisions With Facts Similar to Petitioner's Case : Those Cases Are Controlling Here

141. In 2025, the Government began invoking the Board's decisions in *Matter of Yajure Hurtado*, 29 I. &N. Dec. 216 (B.I.A. 2025), and *Matter of Q. Li*, 29 I. & N. Dec. 66 (B.I.A. 2025), to justify categorical detention under 8

U.S.C. § 1225(b)(2) of noncitizens who had entered through the southern border within the preceding two years and were later arrested in the interior.

142. Federal courts in this Second and Third Circuits, including several judges of the District of New Jersey, have squarely addressed those decisions and have nonetheless granted habeas relief and ordered release where detention exceeded statutory limits or was imposed without constitutionally adequate process. These cases make clear that the BIA's interpretation of § 1225(b)(2) does not displace the judiciary's independent obligation to determine whether custody is lawful under the governing statute and the Constitution, nor does it eliminate the traditional habeas remedy of release.

143. In the EDNY, in *Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025), the court directly confronted the Government's reliance on *Matter of Yajure Hurtado* and *Matter of Q. Li* to support mandatory detention under § 1225(b)(2). The court acknowledged that the BIA in *Q. Li* had concluded that certain noncitizens treated as applicants for admission and placed directly into full removal proceedings are subject to detention "until removal proceedings have concluded." Id. At *5 (quoting *Q. Li*, 29 I. & N. Dec. at 71). The court, however, declined to treat that administrative interpretation as dispositive in habeas. Instead, it held that the statutory classification advanced by DHS did not foreclose judicial review of custody and that detention imposed without proper statutory grounding and individualized process was unlawful. The writ was granted and the Petitioner's immediate release was ordered, with further protection against re-detention absent compliance with §1226(a) procedures. Id. at *9–10. The decision thus confirms that even where DHS invokes *Yajure Hurtado* and *Q. Li*, federal courts retain authority to determine whether § 1225(b)(2) properly applies and to order release when it does not.

144. Other judges in the Eastern District have similarly rejected the proposition that *Yajure Hurtado* strips immigration judges of bond authority in a manner that renders habeas relief unnecessary. In *Rodriguez-Acurio v. Almodovar*, No. 25-CV-6065 (NJC), 2025 WL 3274182 (E.D.N.Y. Nov. 28, 2025), the court considered ICE's reliance on § 1225(b)(2) in light of *Yajure Hurtado* and concluded that a bond-hearing remedy would be futile where the BIA had declared that immigration judges "lack authority to hear bond requests" for individuals DHS characterizes as § 1225(b) detainees. Id. at *6. Because the statutory misclassification deprived the Petitioner of meaningful access to individualized custody review, the court held that release—not remand for a bond hearing—was the appropriate remedy and granted the writ. Id. at *8. In doing so, the court reinforced that when the Government's reliance on *Yajure Hurtado* would effectively preclude any possibility of bond before an immigration judge, federal habeas courts may order immediate release as the only effective relief.

145. Judge Merchant reached a comparable conclusion in *Artiga v. Genalo*, No. 25-CV-5208 (PKC) (VMS), 2025 WL 3184421 (E.D.N.Y. Nov. 18, 2025). There, the Government invoked *Yajure*

*Hurtado* to defend continued detention of a noncitizen arrested within the United States and classified under § 1225(b). The court held that § 1226(a), not § 1225(b)(2), governed custody in the circumstances presented, and that the absence of a proper individualized custody determination violated due process. Id. at *7–9. The court granted habeas relief and ordered release, emphasizing that detention authority must align with the correct statutory framework and that the BIA's interpretation does not eliminate judicial review of executive custody.

146.    Courts outside the Eastern District have reached the same conclusion when faced with the

147.    Government's reliance on *Yajure Hurtado* and *Q. Li*. In *Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), 2025 WL 3295912 (S.D.N.Y. Nov. 26, 2025), the Southern District of New York addressed *Yajure Hurtado* directly and concluded that remanding for a bond hearing would not provide meaningful relief where immigration judges would treat themselves as bound by the BIA's view that § 1225(b) detainees are categorically ineligible for bond. Id. at *4–5. The court therefore granted the petition and ordered that the Petitioner remain free pending removal proceedings. Id. at *6. Similarly, in *Rivera Esperanza v. Francis*, No. 25-CV-8727 (JMF), 2025 WL 3401127 (S.D.N.Y. Dec. 3, 2025), the court rejected the Government's effort to rely on *Yajure Hurtado* to justify continued mandatory detention and granted immediate release, reasoning that habeas courts must ensure that executive detention rests on a lawful statutory basis and affords constitutionally adequate process.

148.    Taken together, these decisions establish a consistent judicial response to the Government's post-2025 reliance on *Matter of Yajure Hurtado* and *Matter of Q. Li*. While those BIA decisions articulate an expansive reading of § 1225(b)(2) as mandating detention of certain recent border entrants treated as applicants for admission, federal courts have not treated that interpretation as self-executing or immune from review. Where DHS has invoked § 1225(b)(2) to detain noncitizens arrested in the interior without meaningful individualized custody review, courts in this Circuit have granted the writ and ordered release. This body of authority confirms that the BIA's construction of § 1225(b)(2) does not foreclose habeas jurisdiction, does not compel detention beyond the statute's text, and does not displace the judiciary's core power to order release when executive custody exceeds lawful bounds.

28

**Petitioner's Warrantless Arrest and Detention Without a Contemporaneous,Individualized Custody Determination Violates the Fourth Amendment,the Fifth Amendment, and the Immigration and Nationality Act (INA).**

149. The Fifth Amendment's Due Process Clause prohibits the government from depriving any person of liberty without due process of law. Freedom from physical restraint lies at the very core of the liberty protected by the Constitution. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This protection extends to citizens and noncitizens alike, including individuals in immigration custody, regardless of their manner of entry or procedural posture. *Id*. As the Supreme Court has repeatedly emphasized, an essential principle of due process is that any deprivation of liberty must be preceded by notice and an opportunity to be heard, appropriate to the nature of the case. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Where detention flows from executive action unaccompanied by the ordinary safeguards of the criminal process, habeas courts are required to engage in the most searching review of the legality of that detention. *Boumediene v. Bush*, 553 U.S. 723, 783 (2008).

150. The Supreme Court has repeatedly emphasized that immigration detention, even when authorized by statute, remains subject to the Due Process Clause. In *Zadvydas v. Davis*, the Court held that civil immigration detention must bear a reasonable relation to its purported purpose and that statutes should not be construed to authorize indefinite detention absent clear congressional intent, precisely because such detention would raise serious constitutional concerns. 533 U.S. 678, 690–701 (2001).

151. The Court reaffirmed that principle in *Demore v. Kim*, explaining that even mandatory detention provisions are constitutionally permissible only when they are limited in duration and accompanied by sufficient procedural safeguards. 538 U.S. 510, 528–31 (2003). Most recently, in *Jennings v. Rodriguez,* while rejecting a statutory bond-hearing requirement as a matter of interpretation, the Court made explicit that constitutional challenges to detention under § 1225(b) remain fully cognizable in habeas and must be addressed on their merits. 583 U.S. 131, 147–49 (2018).

152. Whether the government purports to detain Petitioner under INA § 1225(b) or § 1226, the constitutional inquiry remains the same. The government may not impose civil detention without a legitimate governmental purpose and without procedures sufficient to mitigate the grave risk of

erroneous deprivation of liberty. *Zadvydas*, 533 U.S. at 690–91. Detention that is automatic, categorical, or justified solely by immigration status or manner of entry, without any individualized assessment or opportunity to be heard, offends due process. *Id.* Courts in this Circuit have consistently rejected the notion that Congress's plenary power over immigration permits detention without meaningful process, even where the statute uses mandatory language. *Wang v. Ashcroft*, 320 F.3d 130, 139–40 (2d Cir. 2003).

153.    The government will likely assert that Petitioner's detention arises under the Immigration and Nationality Act, specifically 8 U.S.C. § 1225. Section 1225(a) defines who is deemed an "applicant for admission," a legal classification that attaches at the moment an individual is encountered by immigration officials and is alleged to be seeking entry into the United States. Section 1225(b) then prescribes certain procedures that follow an inspection determination, including detention during expedited removal proceedings under § 1225(b)(1) or pending completion of full removal proceedings under § 1225(b)(2). On its face, however, § 1225 is an inspection and processing statute. It governs how admissibility determinations are made; it does not operate as a freestanding grant of unreviewable detention authority divorced from constitutional limits.

154. Historically, § 1225 was enacted to regulate the inspection function *at the border* or its functional equivalent. Detention under the immigration laws was understood as ancillary to removal proceedings and subject to parole, discretion, and judicial review. The modern practice of treating § 1225(b) as an automatic and self-executing detention mandate represents a sharp departure from that historical understanding. As the Supreme Court recognized in *Shaughnessy v. United States ex rel. Mezei*, even in the context of exclusion, detention authority has never been absolute and has always been subject to constitutional scrutiny where confinement becomes prolonged or arbitrary. 345 U.S. 206, 212–16 (1953).

155. Federal courts in this Circuit have consistently rejected the government's attempt to treat § 1225(b) as a categorical detention license. The Second Circuit has made clear that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the

heart of the liberty that the Due Process Clause protects." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (quoting *Zadvydas*). In *Velasco Lopez*, the court emphasized that civil detention without a meaningful opportunity to obtain release violates due process and that the government bears the burden of justifying continued confinement. Id. at 852–54.

156. Although *Velasco Lopez* arose under § 1226, its constitutional reasoning applies with equal force to detention under §1225, because "the constitutional problem is the same: prolonged detention without adequate procedural protections." Id. at 854. In other words, DHS cannot collapse the INA's two detention tracks to transform an interior apprehension into a border-inspection detention regime. Judge Torres applied that same rule in *Gonzalez v. Joyce*, holding that the Petitioner was "not subject to mandatory detention as a noncitizen 'seeking admission' … under 8 U.S.C. § 1225, but rather may be subject to detention only on a discretionary basis under § 1226," expressly relying on *Samb v. Joyce,* 2025 WL 2398831, at 3 (S.D.N.Y. Aug. 19, 2025).

157. New York federal courts have applied these principles specifically in the § 1225 context, recognizing that the statute does not eliminate the requirement of a contemporaneous, individualized custody determination. In *Lopez-Benitez v. Francis*, Judge Ho held that detention violated due process where the government could not explain when, how, or by whom the decision to detain was made,  and where no individualized assessment preceded the deprivation of liberty. *Ibid*. The court emphasized that pointing to later administrative proceedings could not cure the initial constitutional defect, because "due process requires notice and an opportunity to be heard at a meaningful time." *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

158. Likewise, in *Barco Mercado v. Frances*, Judge Kaplan granted habeas relief where ICE detained the Petitioner first and only later attempted to justify that detention through the administrative process. The court found it dispositive that ICE "did not conduct a custody determination until *after* arresting Petitioner," holding that post-hoc rationalizations could not substitute for constitutionally required procedures. *Ibid.* The court ordered release, not remand to the immigration court, recognizing that the constitutional violation was ongoing and could not be remedied by further delay. *Id*. at 8.

159. Other New York federal court decisions have echoed this reasoning, holding that detention under §

1225(b) without meaningful procedural protections creates an unacceptably high risk of an erroneous

deprivation of liberty. In *Gonzalez v. Joyce*, the court explained that where procedural protections are

"almost nonexistent," the *Mathews* balancing *test* weighs decisively in favor of immediate judicial

intervention. *Ibid* . The court emphasized that exhaustion is not required where the injury is

constitutional and cannot be adequately addressed by an immigration judge or the Board of

Immigration Appeals.

160. In practice, then, the real source of the government's asserted detention power is not § 1225(a) or §

1225(b) as written, but an administrative assumption that classification as an applicant for admission

automatically justifies incarceration. That assumption finds no support in the statutory text, in

historical practice, or in binding constitutional precedent. Section 1225(b) presupposes a lawful seizure

and a valid custody determination; it does not dispense with them. Where detention is imposed without

notice, without an opportunity to be heard, and without an individualized assessment of necessity, the

government is not exercising authority granted by Congress but acting ultra vires and in violation of

due process.

161. Accordingly, while the government may invoke § 1225(b) as the nominal basis for Petitioner's

detention, this Court must look to the substance of what occurred. Where, as here, the deprivation of

liberty was imposed without constitutionally sufficient process and continues to this day, habeas relief

lies in release. Ordering further administrative proceedings would merely prolong an unlawful

confinement and fail to cure the constitutional injury. As courts in this District have

repeatedly recognized, "[r]elease—not remand—is the appropriate remedy for unconstitutional

immigration detention." *Barco Mercado*; see also *Velasco Lopez,* 978 F.3d at 855.


### The Fifth Amendment Forbids Arbitrary Civil Detention; § 1226(A) Requires ICE To Make An Individualized Custody Decision Before Or At The Moment Liberty Is Taken.

162.    The liberty interest in being free from government custody lies at the heart of due process. Where the

government has discretion to detain or release under § 1226(a), due process demands safeguards that ensure

discretion is actually exercised and not replaced by automatic detention. In *Lopez Benitez v. Francis*, Judge Ho explained that § 1226(a)'s breadth triggers due process constraints precisely because the government has wide discretion to decide who to detain. *Ibid.* In *Kelly v. Almodovar*, Judge Torres emphasized that an immigration-judge bond proceeding is a custody "re-determination" and is not a substitute for ICE's obligation to make the initial custody decision through a deliberative process prior to or contemporaneous with the loss of liberty. *Ibid*. There is a plethora of cases on this most critical point. I will cite Judge Bulsara's decision in the EDNY *Gopie v. Lyons* applies this principle. *Gopie* grants habeas relief where ICE failed to make a valid initial custody determination and tried to rely on a post-hoc process. *Gopie* holds that due process required ICE to make a custody determination at or before arrest and that the government's after-the-fact approach does not satisfy the statutory and constitutional requirements that constrain discretionary detention. There, the court granted the writ where ICE failed to make a lawful initial custody determination contemporaneous with arrest and attempted to justify detention after the fact. *Ibid.*

**ICE's Warrantless Street Arrest, Undertaken Without Prior Revocation of the Form I-220A or Any Determination of a Violation of Release Conditions Renders Petitioner's Detention Ultra Vires and Unlawful Under 8 U.S.C. § 1226 and the Fifth Amendment**

163. Because the Petitioner lacks any access to DHS detention documents, we are obligated to advance this critical argument only based on our experience in many similar cases, pending receipt of the documents from DHS. We believe that at some point there was an order of release, in this case, early on when Petitioner was released. In order to release or parole Petitioner, a form entitled Order of Release, Form I-220-A, or similar document would have memorialized the decision to release Petitioner and the conditions of release.

164. The revocation of an Order of Release on Recognizance documented on Form I-220A is not an informal administrative adjustment; it is the reassertion of physical custody over a person whose liberty has already been formally restored pursuant to statutory authority. Once DHS exercises its discretion under 8 U.S.C. § 1226(a) to release an individual on recognizance or conditional parole, it necessarily determines that continued physical detention is not required to ensure appearance or protect the community. That determination is memorialized in the I-220A and reflects an individualized custody judgment under §

33

1226(a), not a provisional courtesy. Because liberty has been restored through an exercise of statutory discretion, the Government may not revoke that release arbitrarily, retroactively, or without compliance with the statutory and regulatory framework governing immigration custody.

165. Section 1226(b) provides that the Attorney General "may at any time revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b). The phrase "at any time," however, does not eliminate procedural safeguards or constitutional limits. It presupposes lawful rearrest authority and a contemporaneous custody basis. Revocation must occur through the mechanisms prescribed by regulation, including 8 C.F.R. § 236.1(b) and (c), which require a valid warrant of arrest (Form I-200) or a properly justified warrantless arrest under 8 U.S.C. § 1357(a)(2), supported by probable cause and a showing that the individual is likely to escape before a warrant can be obtained. Absent a lawful arrest authority, ICE cannot simply convert supervision into detention.

166. Moreover, because release under § 1226(a) is discretionary and individualized, revocation necessarily requires a new individualized custody determination. The regulations governing § 1226 custody contemplate that when a person is taken back into custody following release, the agency must make a fresh custody assessment and afford the noncitizen the right to seek bond redetermination before an Immigration Judge. See 8 C.F.R. § 236.1(d)(1). Detention following revocation is therefore not self-executing; it must rest on a documented, contemporaneous determination that the individual now presents a flight risk or danger to the community. A rearrest unsupported by changed circumstances, new evidence, or violation of release conditions transforms § 1226(b)'s discretionary authority into an instrument of arbitrary confinement.

167. The record reflects no lawful revocation of release prior to Petitioner's arrest. ICE seized Petitioner on the street without first issuing, serving, or documenting any revocation of the previously granted Order of Release on Recognizance (Form I-220A), and without making any determination that Petitioner had violated the conditions of that release. That sequence of events matters. Once DHS exercised its discretion under 8 U.S.C. § 1226(a) to release Petitioner on recognizance, it necessarily determined—after an individualized custody assessment—that detention was not required to ensure appearance or protect the

community. That liberty interest could not be extinguished by an unannounced street arrest untethered to the statutory and regulatory framework governing revocation.

168. Section 1226(b) permits the Attorney General to "revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b). But revocation presupposes that it has, in fact, occurred. The statute does not authorize officers to ignore the prior release order and simply detain first, justify later. The regulatory structure confirms this. Under 8 C.F.R. § 236.1(b) and (c), custody decisions—including continued detention following release—must rest on lawful arrest authority and a contemporaneous custody determination. If ICE seeks to re-take custody after issuing an I-220A, it must identify a basis for revocation, execute a valid arrest (either pursuant to a warrant or consistent with 8 U.S.C. § 1357(a)(2)), and document a new custody decision. None of that occurred here.

169. There is no evidence that Petitioner violated any condition of release. The Government has not alleged failure to report, failure to appear, commission of a new offense, or any other breach of the I-220A's terms. There is likewise no indication that ICE made a contemporaneous determination that circumstances had materially changed such that detention was newly warranted. Instead, Petitioner was subjected to a warrantless street arrest with no prior notice, no documented revocation, and no intervening custody assessment. That is not a "revocation" within the meaning of § 1226(b); it is a nullification of the prior release decision without process.

170. The Constitution does not permit that maneuver. Immigration detention, while civil in character, implicates the Fifth Amendment's guarantee that liberty may not be deprived without due process of law. See *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Once the Government has formally restored liberty under § 1226(a), it may not rescind that liberty arbitrarily. Due process requires that executive detention be constrained by ascertainable standards and implemented through procedures that ensure detention is justified in the individual case. A street arrest unaccompanied by any revocation decision or custody rationale severs detention from the statutory scheme Congress enacted.

171. Nor may ICE rely on post-hoc rationalizations to cure the defect. Federal courts have repeatedly rejected attempts to justify detention by pointing to administrative processes that were not undertaken at the time of

seizure. Detention authority must exist at the moment of arrest. Here, at the moment officers placed Petitioner in custody, the operative document governing his status was the I-220A—an order expressly permitting him to remain at liberty subject to conditions. Absent a documented revocation or lawful re-arrest authority tied to that revocation, officers lacked statutory authority to detain him under § 1226.

172. The Government's failure to engage the revocation framework is not a technical irregularity; it is a jurisdictional defect. Section 1226(a) authorizes detention only pursuant to a lawful custody determination. Where ICE bypasses the required steps—no finding of violation, no written revocation, no contemporaneous custody assessment, and no adherence to 8 C.F.R. § 236.1—the resulting detention is *ultra vires*. The Executive may not convert conditional liberty into confinement by ignoring its own release order.

173. In sum, Petitioner was not arrested following a lawful revocation of release. He was arrested notwithstanding the absence of any revocation. Because ICE never made the determination required to rescind the I-220A, and because no violation of release conditions was identified before the seizure, the arrest lacked statutory foundation. Continued detention flowing from that defective arrest cannot stand. Habeas relief is warranted because the Government has failed to demonstrate that Petitioner's present custody rests on a lawful revocation of the release it previously granted.

174. Federal courts within the District of New Jersey and the Southern and Eastern Districts of New York have repeatedly emphasized that immigration detention must rest on a clear statutory basis and a contemporaneous, individualized custody rationale. Where the Government fails to articulate when, why, how, or by whom a detention decision was made, courts have found the custody determination constitutionally deficient. The same principle applies with even greater force where ICE seeks to undo a prior determination that detention was unnecessary.

175. If ICE purports to revoke an I-220A while simultaneously reclassifying detention under a different statutory provision—such as shifting from § 1226(a) to § 1231(a)—the agency must establish that the prerequisites for that statutory scheme have been satisfied, including the existence of a valid final order of removal and the lawful commencement of the removal period under 8 U.S.C. § 1231(a)(1)(B). A change in statutory label does not cure defects in arrest authority, reinstatement procedures, or custody

36

documentation. Absent proper statutory transition, detention remains governed by § 1226, and the individual retains the right to bond review.

176. The constitutional stakes are heightened because revocation of an I-220A extinguishes a vested liberty nterest previously granted by the Government itself. Once release has occurred, the individual resumes community life in reliance on that official determination. Re-detention without lawful warrant authority, without documented violation of conditions, and without prompt access to bond review offends both regulatory structure and constitutional due process. The Executive's power to detain in the immigration context, while broad, is not unbounded. It must be exercised within the limits Congress prescribed and the Constitution requires.

177. Accordingly, where ICE has revoked an I-220A without demonstrating compliance with 8 U.S.C. §§ 1226(a) and (b), without lawful rearrest authority under § 1357(a)(2), without adherence to 8 C.F.R. § 236.1, and without affording prompt bond redetermination, continued detention is ultra vires. In such circumstances, habeas relief is warranted because the custody no longer rests on a lawful statutory predicate but instead reflects arbitrary executive confinement. The writ exists precisely to test that boundary and to restore liberty where the Government has stepped beyond it.

**The Fourth Amendment Applies to Interior Civil Immigration Arrests.**
**Warrantless Arrest Authority Is Narrow and Statutorily Constrained**

178. Civil immigration enforcement does not occur in a constitutional vacuum. Inside the United States, the Fourth Amendment governs seizures, and warrantless arrests must fall within narrow exceptions. Congress likewise limited ICE's warrantless arrest authority in 8 U.S.C. § 1357(a)(2), which requires statutory prerequisites before an officer may arrest without a warrant.

179. ICE arrested him without 1) a "reason to believe that he was removable" and that 2) he was "likely to escape before a warrant can be obtained," which are the minimum requisites under INA Section 287 (a)( 2), 8 USC 1357 (a)(2) for a warrantless arrest by ICE.

180. When ICE cannot prove those prerequisites, the seizure is invalid. Here, ICE officers did not present any warrant and did not articulate any lawful basis for arresting Petitioner. That is the hallmark of an

unreasonable seizure, and it cannot serve as the foundation for lawful civil detention

## CLAIMS FOR RELIEF

### CLAIM ONE

**Petitioner's Detention Is Unlawful Because it is the Direct Product Of a Fourth Amendment Violation**

181. The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. The Government bears the burden of demonstrating that a warrantless seizure was supported by probable cause. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Absent probable cause, an arrest violates the Fourth Amendment. *Dunaway v. New York*, 442 U.S. 200, 213–16 (1979).  Here, ICE agents possessed no judicial warrant and no administrative warrant no Form I-200. They articulated no probable cause that Petitioner had committed a crime. The same principle applies here. The sole evidence of alienage and removability derives from statements elicited after the unconstitutional seizure. There was no prior A-file, no independent record of immigration history, and no preexisting database confirmation. The Government created an A-file only after obtaining statements post-arrest. Under Second Circuit precedent, such derivative evidence cannot be insulated from suppression where there is an unconstitutional violation. Pretzantzin, 736 F.3d at 649–50. Detention premised solely on evidence obtained in violation of the Constitution cannot stand.

### The Arrest Exceeded Statutory Authority and Is Ultra Vires

182. Even apart from the Fourth Amendment, ICE agents are constrained by statute. Section 287(a)(2) of the Immigration and Nationality Act authorizes warrantless arrest only where an officer has reason to believe the individual is removable and is likely to escape before a warrant can be obtained. 8 U.S.C. § 1357(a)(2). The regulation implementing that authority requires probable cause. 8 C.F.R. § 287.8(c)(2)(i).

183. **There is no allegation here that Petitioner was fleeing, likely to escape, or otherwise evading law enforcement. Petitioner was simply showing up to his ICE check-in, as was his obligation. Such conduct falls outside the limited statutory authorization for warrantless civil immigration arrest.**

184.  An agency may not act beyond the bounds of authority granted by Congress. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–68 (1954). Where an arrest exceeds statutory limits, detention flowing from that arrest is unlawful. Habeas corpus lies to remedy detention imposed without statutory authority.

38

See *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (civil immigration detention must be authorized by statute and consistent with due process).

185.  Because ICE acted without satisfying § 1357(a)(2), Petitioner's arrest was ultra vires. Detention founded upon that unlawful arrest is not authorized by the INA and therefore violates § 2241(c)(3).

**ICE's Warrantless Arrest, Undertaken Without Revocation of the I-220A and Without a Lawful Warrant of Arrest, Violated the INA, Governing Regulations, and the Fifth Amendment**

186. Petitioner's seizure was unlawful for two independent and compounding reasons. First, ICE never revoked the previously issued Form I-220A Order of Release on Recognizance before re-taking Petitioner into custody. Second, officers effected a warrantless arrest without satisfying the statutory predicates required for such an arrest under the Immigration and Nationality Act ("INA"). Either defect is fatal. Together, they render the arrest ultra vires and the ensuing detention unlawful.

**I. Statutory Arrest Authority Under the INA**

187. Immigration arrest authority is strictly defined by statute. Congress has provided two—and only two— mechanisms by which immigration officers may effectuate an arrest in the civil removal context.

188. The first, is an arrest must be pursuant to a warrant. Under 8 U.S.C. § 1226(a), the Attorney General "may issue a warrant for the arrest of an alien and detain the alien pending a decision on whether the alien is to be removed." The implementing regulation, 8 C.F.R. § 236.1(b), provides that an immigration officer may arrest a noncitizen "pursuant to a warrant of arrest issued by the Service." That warrant is memorialized on Form I-200 and must be administratively issued in accordance with DHS protocols. The statutory text makes clear that detention under § 1226(a) flows from the issuance and execution of a warrant.

189. The second mechanism is limited warrantless arrest authority under 8 U.S.C. § 1357(a)(2). That provision authorizes an immigration officer to arrest without a warrant only if two conditions are satisfied: the officer must have "reason to believe" the person is in the United States in violation of law, and the officer must further have "reason to believe that the alien is likely to escape before a warrant can be obtained." Both prongs are mandatory. Warrantless arrest authority is thus the exception—not the rule—and is expressly conditioned on exigency.

190. The regulation at 8 C.F.R. § 287.8(c)(2) reinforces these limitations, providing that an immigration officer may make a warrantless arrest only where the statutory criteria of § 1357(a)(2) are satisfied. The regulation does not enlarge statutory authority; it implements it. Absent satisfaction of both the violation and likely-to-escape prongs, officers must secure a warrant before arrest.

191. In this case, there was no warrant. There is no evidence of a Form I-200 issued prior to the seizure. There is likewise no indication that officers made or documented the statutory exigency finding required by § 1357(a)(2)—namely, that Petitioner was likely to escape before a warrant could be obtained. Petitioner was not fleeing, evading service, or concealing his whereabouts. To the contrary, he was previously released by ICE on an I-220A and living openly under supervision. The statutory predicates for warrantless arrest were therefore absent.

## II.  The Prior I-220A Release Heightened the Requirement of a Warrant

192. The illegality of the warrantless arrest is amplified by the fact that Petitioner had previously been released on an Order of Release on Recognizance under 8 U.S.C. § 1226(a). Once DHS exercised its discretion to release Petitioner, it necessarily determined that detention was not required to mitigate flight risk or danger. That discretionary judgment was formalized through the I-220A.

193.  Under 8 U.S.C. § 1226(b), the Government may "revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." The statutory language presupposes two steps: revocation and rearrest under lawful authority. Revocation must precede rearrest. Rearrest must rest on lawful warrant authority. Here, neither occurred. There was no documented revocation of release, and there was no execution of a warrant.

194. The Government cannot collapse these steps into a single, undocumented seizure. Section 1226(b) does not authorize arrest first and revocation later. It requires revocation as a predicate to re-detention. Absent revocation, the I-220A remained operative at the time of arrest. ICE officers therefore lacked statutory authority to treat Petitioner as subject to custodial detention.

## III.  Warrantless Civil Immigration Arrests Remain Constrained by the Fourth and Fifth Amendments

195. Although removal proceedings are civil in nature, civil detention constitutes a significant restraint on liberty and is subject to constitutional limits. The Supreme Court has repeatedly recognized that immigration detention is constrained by due process. See *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Even in upholding mandatory detention in *Demore v. Kim,* 538 U.S. 510 (2003), the Court emphasized that detention must be authorized by clear statutory command.

196.  The Fourth Amendment's prohibition on unreasonable seizures applies to civil immigration arrests. Courts have held that warrantless immigration arrests must strictly comply with § 1357(a)(2). The statutory "likely to escape" requirement is not aspirational; it is jurisdictional. Where officers fail to articulate or document exigency, the arrest exceeds statutory authority and is unlawful.

197. Due process principles further prohibit arbitrary executive detention. An arrest undertaken without a warrant, without exigency, and without revocation of a prior release order is not merely procedurally irregular—it is executive detention unmoored from statutory authorization. The Fifth Amendment does not permit the Government to extinguish a previously granted liberty interest by ignoring the procedural prerequisites Congress imposed.

## IV.  The Absence of a Warrant Cannot Be Cured by Post-Hoc Justification

198. Detention authority must exist at the moment of seizure. Courts have rejected attempts by the Government to justify detention by pointing to later administrative documentation or subsequent proceedings. Where officers lacked statutory authority at the time of arrest, subsequent paperwork does not retroactively validate the seizure. The legality of custody is assessed at its inception.

199. Here, the operative facts at the time of arrest were straightforward: Petitioner was subject to an unrevoked I-220A; no warrant had been issued; no violation of release conditions had been determined; and no exigency finding under § 1357(a)(2) had been made. At that moment, officers lacked statutory authority to detain him. The seizure therefore violated both the INA and the Constitution.

## V.  The Detention Is Ultra Vires and Subject to Habeas Relief

200. Federal courts possess habeas jurisdiction under 28 U.S.C. § 2241 to determine whether executive detention rests on lawful authority. When ICE arrests an individual without a warrant in the absence of the

statutory prerequisites for warrantless arrest, and without revoking an operative order of release, the detention is ultra vires. It is not authorized by § 1226(a), § 1226(b), or § 1357(a)(2). It is executive confinement without statutory foundation.

201.   Because Petitioner's arrest was conducted without a warrant, without exigent justification, and without revocation of his prior release, the Government cannot meet its burden of demonstrating lawful custody authority. Continued detention flowing from that defective arrest violates the INA and the Fifth Amendment.

202. Section 1226(a) authorizes discretionary detention or release pending removal decisions. Because the government possesses broad discretion to decide whether to detain, due process requires procedures that constrain arbitrary detention and ensure that discretion is actually exercised through an individualized assessment. See *Lopez Benitez v. Francis*, (explaining that due process must account for the government's wide discretion to arrest and detain under §1226(a)). *Id.* The governing regulatory scheme requires a prompt custody determination following arrest. ICE must decide—based on individualized facts—whether detention is necessary and whether release conditions can reasonably assure appearance and safety.

203. Respondents cannot lawfully recharacterize Petitioner's interior as mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Section 1225(b)(2)(A) governs mandatory detention of certain noncitizens "seeking admission"—i.e., the statutory framework for inspection and admission—whereas § 1226(a) governs discretionary detention of noncitizens already present in the United States pending removal proceedings.

204. In *Lopez Benitez v. Francis*, Judge Ho explained that § 1225(b)(2)(A) "requires mandatory detention of certain noncitizens' seeking admission' to the country," while § 1226(a) supplies" discretionary authority to detain other noncitizens who are 'already in the country.'" *Id* at 4

### CLAIM TWO

**Exhaustion Is Not Required—and Is Constitutionally Unavailable—Where DHS Invokes Matter  of Yajure Hurtado and 8 U.S.C. § 1225(b) to Foreclose Any Bond Authority; In Such Cases, Immediate Release Is the Only Meaningful Habeas Remedy**

205.    Petitioner has no criminal history and has lived peacefully in the United States since arriving in 2022. DHS nevertheless has classified him as subject to mandatory detention under 8 U.S.C. § 1225(b)(2) based solely on the manner of his entry.

206.    In materially indistinguishable circumstances, the Southern District of New York has repeatedly

rejected DHS's attempt to invoke § 1225(b) to justify prolonged detention of long-present noncitizens

and has held that such detention is unlawful and unconstitutional from its inception.

207. In *Rodriguez-Acurio v. Almodovar*, the court held that DHS's use of § 1225(b)(2) to detain a noncitizen

who had been living in the United States for years was contrary to the statutory scheme and

incompatible with due process, emphasizing that § 1225(b) is a limited screening provision that cannot

be transformed into a sweeping mandatory detention authority for individuals already inside the country

and placed into removal proceedings. No. 25-CV-6065 (NJC), 2025 WL 3314420 (E.D.N.Y. Nov. 28,

2025). The court further explained that where ICE detains under the wrong statute and fails to provide

the individualized custody determination required by § 1226(a), the detention is unlawful from the

moment it begins and violates due process.

208. Crucially for habeas relief, NY courts have made clear that a belated bond hearing is not a

meaningful remedy for detention that was unlawful from inception.

209. In *Rodriguez-Acurio*, the court rejected the government's request for a remand for a bond hearing,

holding that such relief would not cure the completed constitutional violation and would be futile in light

of the BIA's 2025 decision in *Matter of Yajure-Hurtado*, which the government itself invokes to argue

that Immigration Judges lack authority to grant bond to individuals detained under § 1225(b). Because

*Yajure-Hurtado* is binding on Immigration Judges, ordering a bond hearing would offer only illusory

relief while leaving the unconstitutional detention intact. Id.

210. The same reasoning applies here. DHS simultaneously asserts that Petitioner is mandatorily detained

under § 1225(b) and that Immigration Judges lack bond authority under *Yajure-Hurtado*. Under EDNY

precedent, a federal court need not—and should not—order a futile administrative proceeding that the

government contends is unavailable as a matter of law. Where the government's own legal position

forecloses bond, habeas relief must be effective, not symbolic.

211. Other 2025 EDNY decisions confirm that immediate release is the proper remedy in these

circumstances. In *Artiga v. Genalo*, the court granted habeas relief and ordered release after

concluding that DHS's reliance on § 1225(b) to detain a long-present noncitizen was unlawful and

that post-hoc administrative process could not remedy the deprivation of liberty already inflicted.

No. 25-CV-5208 (OEM), 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025).

212. Likewise, in this district in *Hyppolite v. Noem*, the court recently held that detention without the

contemporaneous, individualized custody determination required by § 1226(a) violates due process and

warrants release, not remand for further agency proceedings. *Ibid.* This case fits squarely within that line

of authority.

213. Petitioner's lack of any criminal history, and placement into ordinary removal proceedings underscore

that DHS's invocation of § 1225(b) is both statutorily improper and constitutionally infirm.

214. Because Petitioner's detention was unlawful from the outset and because a bond hearing would be

futile under the government's own interpretation of *Yajure-Hurtado,* the only meaningful habeas

remedy is immediate release under proper conditions. Even where exhaustion of administrative

remedies may sometimes be treated as a prudential consideration rather than a jurisdictional bar, it is not

proper in this case.

215. Petitioner does not merely challenge a discretionary custody determination or seek review of an

immigration judge's weighing of bond factors; rather, Petitioner challenges the legality of the seizure and

detention itself and the government's statutory and constitutional authority to confine him at all.

216. Where a petitioner raises such a challenge, exhaustion is routinely excused because administrative

remedies are inadequate to prevent irreparable harm. See *McCarthy v. Madigan*, 503 U.S. 140, 146–49

(1992); *Howell v. INS*, 72 F.3d 288, 291 (2d Cir. 1995). That principle applies with force where, as

here, ICE has refused to provide contemporaneous custody documentation explaining when, why, or

under what statutory authority the decision to detain was made, rendering any administrative route

incapable of curing the unlawful deprivation of liberty.

Requiring exhaustion under these circumstances would only prolong unconstitutional confinement

and heighten the risk of transfer to a distant facility, thereby defeating this Court's jurisdiction and

severely impairing access to counsel. See *Jennings v. Rodriguez*, 583 U.S. 281, 296–97 (2018).

217. Where DHS takes the position that detention arises under § 1225(b), immigration judges are

stripped of bond jurisdiction as a matter of law, and any requirement that a detainee exhaust

administrative remedies becomes not merely futile but constitutionally incoherent.

218. Where DHS invokes *Yajure Hurtado* and § 1225(b) to argue that an immigration judge lacks

bond jurisdiction, exhaustion of administrative remedies is excused because no administrative

remedy exists. In that posture, an order directing a bond hearing is not meaningful relief, because

the agency asserts that the hearing cannot lawfully occur. Habeas relief must be effective rather

than illusory, and federal courts may not discharge their constitutional duty by issuing orders that

the government's own legal theory renders impossible to implement. See *Mercado v. Frances.*

219. Many judges in the district courts have therefore held that exhaustion is futile, unnecessary, and

constitutionally unavailable where detainees challenge detention that is ultra vires, mandatory

only by agency fiat, and categorically insulated from immigration-court review. In such cases,

the only remedy that meaningfully vindicates the Suspension Clause and the Due Process

Clause is immediate release from custody. See *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001);

*Gonzalezv. Joyce,* 2025 WL S.D.N.Y. 2025).

### This Court Should Reject Any Claim by the Respondents That this Petition Should Be Denied Because The Petitioner May Be Bond Eligible

### Even if a Bond Hearing Where Conducted And Bond Were Denied An Appeal Would Be Futile

220. In a case where this Court would order a bond hearing, if a reasonable bond were denied, an appeal

would be futile. Petitioner seeks relief from this Court because any months-long appeal to the Board

of Immigration Appeals would be futile. A request for a bond hearing is likewise futile. Not only

would the bond hearing appeal be decided or rendered moot long after the removal hearing was

concluded - since removal hearings are being fast-tracked - it would also be denied under current

BIA authority. The agency's position is clear: both immigration judges and the Board are bound by

*Yajure-Hurtado*, and the policy underlying that position was issued in coordination with the Department of

Justice, which exercises supervisory authority over the immigration courts and the BIA, including the power of the Attorney General to modify or overrule Board decisions. See 8 C.F.R. § 1003.1(h).

221. It is therefore unsurprising that the Board has held that individuals like Petitioner are subject to mandatory detention under § 1225(b)(2)(A), rather than bond-eligible detention under § 1226(a), and that in identical habeas proceedings nationwide, EOIR and the Attorney General have consistently reaffirmed that position through briefing and oral argument. Finally, exhaustion is independently excused because neither immigration judges nor the BIA possess authority to adjudicate constitutional claims. See *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006); *Singh v. U.S. Dep't of Homeland Sec.,* 526 F.3d 72, 81 (2d Cir. 2008).

222. Here, Petitioner asserts not only that Respondents are unlawfully detaining him without bond under an inapplicable statute, but also that such detention violates the Due Process Clause itself. If Respondents intended to lawfully detain Petitioner, they were required to do so pursuant to 8 U.S.C. § 1226(a) and its attendant regulations, which mandate notice, a custody determination, and an opportunity for release on bond. See 8 C.F.R. §§ 236.1(c), (d). Having failed to comply with those requirements, Respondents may not now invoke the exhaustion doctrine to shield an unlawful detention from judicial review.

### CLAIM THREE

### Failure To Follow Mandatory Detention Regulations and Procedures Renders Custody Unlawful Under Accardi

223. Under *Accardi v. Shaughnessy*, 347 U.S. 260 (1954), an agency violates the law when it disregards its own binding regulations designed to protect individual rights. Executive officials are not free to treat procedural safeguards as optional. When liberty is restrained, compliance with governing regulations is mandatory—not discretionary.

224. Immigration detention is not an exercise of unbounded executive will. It is governed by statutory commands, regulatory constraints, and mandatory custody procedures that dictate how arrests occur, how individuals are processed, and how detention decisions are made and reviewed. These rules are the legal architecture that separates lawful custody from arbitrary imprisonment.

225. When ICE fails to follow mandatory arrest-processing procedures, neglects required documentation, omits timely and meaningful custody determinations, or disregards the regulatory prerequisites governing warrantless arrests, detention is not merely defective—it is ultra vires. Custody imposed outside the regulatory framework is detention without lawful authority.

226. The Fifth Amendment forbids arbitrary executive detention. U.S. Const. amend. V. Executive action becomes arbitrary when it ignores controlling legal limits, substitutes ad hoc discretion for prescribed procedures, or treats mandatory safeguards as expendable. A detention decision reached in violation of binding regulations is the paradigmatic example of arbitrary action. Under *Accardi*, it cannot stand.

227. The rule is especially strict in the context of warrantless arrests. Congress and DHS regulations narrowly circumscribe when such arrests may occur and what must immediately follow. Those safeguards ensure that lawful custody authority exists at the moment liberty is seized. Authority cannot be manufactured after the fact. If required determinations were not made and regulatory prerequisites were not satisfied when detention began, the custody was unlawful from its inception.

228. Habeas courts in this Circuit have not hesitated to order immediate release where DHS/ICE cannot demonstrate lawful custody authority coupled with constitutionally adequate process. See, e.g., *Chipantiza-Sisalema v. Francis* (ordering immediate release); *Valdez v. Joyce* (ordering immediate release). These decisions reflect a settled principle: when detention rests on procedural shortcuts, misapplied statutory authority, or the absence of required custody review, release—not remand for administrative repair—is the proper remedy.

229. The government cannot salvage unlawful detention by invoking generalized enforcement discretion. Discretion operates within the bounds of law; it does not authorize departure from binding procedural commands. When the Executive disregards its own arrest and detention regulations, it acts without legal authority. Under *Accardi,* the core purpose of habeas corpus continued confinement in those circumstances is impermissible.

230. In short, regulatory noncompliance is not a technicality. It extinguishes the legal foundation

for custody. Where detention is the product of arbitrary action and disregard of mandatory safeguards habeas relief is not merely appropriate—it is compelled.

## CLAIM FOUR

### Request for Order Directing Expedited Production of DHS Custody and Administrative Records

231. Petitioner respectfully requests that the Court order Respondents to produce, on an expedited basis, the DHS and ICE custody, detention, and administrative records that form the legal and factual basis for Petitioner's arrest and continued detention. Production of these materials is necessary for Petitioner to prosecute his request for release from unlawful detention and for the Court to conduct meaningful habeas review under 28 U.S.C. § 2241.

232. Petitioner challenges the legality of his seizure and detention, including the statutory authority asserted by DHS, the existence and validity of any custody determinations, and the denial of any bond or release authority. The documents reflecting those determinations are exclusively within the possession and control of the government. Absent their production, Petitioner is forced to litigate without access to the factual and legal predicates for his confinement, frustrating due process and undermining habeas corpus's core function as a safeguard against unlawful restraint.

233. Petitioner therefore seeks an order directing Respondents to produce all DHS and ICE records relating to arrest and initial custody authority, including *Form I-200* (Warrant for Arrest of Alien), Form I-205 (Warrant of Removal/Deportation), *Form I-213* (Record of Deportable/Inadmissible Alien), Form I-265 (Notice to Detain, Remove, or Present Alien), and *Form I-203* (Order to Detain or Release Alien). Petitioner further seeks production of any expedited removal or reinstatement materials, including Form I-860 (Notice and Order of Expedited Removal), *Form I-871* (Notice of Intent or Decision to Reinstate Prior Order), Form *I-296* (Notice to Alien Ordered Removed/Departure Verification), and the underlying prior removal order with proof of service and execution. Petitioner also seeks production of all custody determinations and redeterminations, including all versions of Form *I-286* (Notice of Custody Determination), together with any ICE or ERO custody review worksheets, memoranda, or notes, whether maintained in paper or electronic form, and all records

reflecting the statutory detention authority asserted by DHS, including whether detention is claimed under 8 U.S.C. § 1225(b), § 1226(a), § 1226(c), or § 1231. Because DHS routinely relies on internal risk assessments and legal guidance to deny release, Petitioner further seeks production of the Risk Classification Assessment and any records reflecting denial of bond or release authority, including reliance on *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025), or other DHS guidance.

234. Petitioner additionally seeks records concerning detention location and transfers, including ICE transfer orders, movement or transport logs, detention facility intake records, and inter-facility transfer documentation. Where applicable, Petitioner also seeks all credible fear or reasonable fear interview records and any records reflecting referral to, or denial of, fear screening. Finally, Petitioner seeks production of the complete administrative immigration file, including the A-File in paper and electronic form, all DHS and ICE database entries relating to Petitioner, and any policy memoranda relied upon in making the custody determinations at issue.

235. Courts in the New York have repeatedly recognized that where a habeas Petitioner challenges the legality of immigration detention itself, production of DHS custody determinations and the administrative record is essential to meaningful judicial review. See, e.g., *Barco Mercado v. Francis,* Gopie *v. Lyons***,** *Gonzalez v. Joyce*, Ibid.

236. Petitioner respectfully requests that the Court order Respondents to produce these materials within thirty to seventy-two hours, as the Court deems appropriate given the ongoing deprivation of liberty. Petitioner further requests that the Court make clear that failure to timely produce the ordered records will result in appropriate consequences, including adverse inferences and, where the government cannot substantiate a lawful basis for detention, Petitioner's immediate release.

## CLAIM SIX

### Request For Attorneys Fees Under The Equal Access To Justice Act

237.  Petitioner respectfully requests that this Court expressly preserve Petitioner's right to seek an award of reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28

238.    U.S.C. § 2412, should Petitioner prevail in this habeas corpus proceeding or obtain the relief requested herein through this Temporary Restraining Order or subsequent order of the Court. EAJA provides that a prevailing party in a civil action against the United States is entitled to an award of attorneys' fees and costs unless the government's position was substantially justified or special circumstances would make an award unjust. See 28 U.S.C. § 2412(d)(1)(A). Immigration habeas corpus proceedings constitute "civil actions" within the meaning of EAJA, and federal courts in this District have recognized that noncitizens who obtain relief from unlawful detention—including release, termination of custody, or injunctive relief—qualify as prevailing parties for purposes of EAJA where the government's conduct is not substantially justified.

239.    Here, Petitioner has been subjected to an unlawful seizure and detention without statutory authority and in violation of the Due Process Clause of the Fifth Amendment. The government's actions necessitated the immediate filing of this emergency habeas petition and application for a Temporary Restraining Order to prevent irreparable harm, including continued unlawful detention and the risk of transfer beyond this Court's jurisdiction. Under these circumstances, the government's position lacks substantial justification, and Petitioner should not bear the financial burden of vindicating fundamental constitutional rights.

240. Accordingly, Petitioner respectfully requests that this Court's Temporary Restraining Order expressly provide that nothing in the Court's order shall be construed to waive or limit Petitioner's right to seek attorneys' fees and costs under EAJA, and that Petitioner may move for such fees upon prevailing in this action or obtaining the relief sought, including release from custody or other injunctive relief ordered by the Court.

## **REQUEST FOR RELIEF**

For the foregoing reasons, Petitioner respectfully requests that this Court:

   a) Issue an Order to Show Cause pursuant to 28 U.S.C. § 2243 directing Respondents to show cause why a Temporary Restraining Order should not remain in effect pending adjudication of the habeas petition;

   b) Issue an immediate Temporary Restraining Order prohibiting Respondents from transferring Petitioner outside this District of New Jersey and the SDNY or the

EDNY, as otherwise ordered by this Court

c) Direct Respondents to provide reasonable and timely access to counsel, including meaningful and confidential in-person legal visitation;

d) Direct Respondents to file, within forty-eight (48) hours, a full return certifying the statutory and factual basis for detention pursuant to 28 U.S.C. § 2243;

e) Require production, within forty-eight (48) hours of this Order, of all custodial and administrative documents supporting detention, including but not limited to any Form I-200 warrant, custody determination records, charging documents, documentation reflecting the asserted statutory detention authority, and the complete Department of Homeland Security administrative file ("A-File"), as well as all DHS and ICE custody, detention, and administrative records relating to Petitioner, with appropriate relief for noncompliance;

f) Order Respondents to produce Petitioner forthwith before this Court as necessary to effectuate meaningful habeas review;

g) Upon adjudication of the Petition, grant the writ of habeas corpus and order Petitioner's immediate release from unlawful detention;

h) In the alternative, order Respondents to conduct a lawful, contemporaneous custody determination within twenty-four (24) to forty-eight (48) hours, supported by documentation demonstrating lawful arrest authority and individualized deliberation consistent with statutory and constitutional requirements;

i) Award reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), should Petitioner prevail in this action; and

j) Grant such other and further relief as this Court deems just and proper.


Respectfully submitted,

## /s/ Peter Kapitonov

Peter Kapitonov
MUSA-OBREGON LAW P.C.
140 Grand Street, Suite 307
White Plains, NY 10601
michael@musa-obregon.com
718-803-1000
February 24, 2026

*/s/ S. Michael Musa-Obregon*

S. Michael Musa-Obregon, Esq.
        On the Brief
MUSA-OBREGON LAW P.C.
140 Grand Street, Suite 307
White Plains, NY 10601
michael@musa-obregon.com
718-803-1000
February 24, 2026
New York, NY

VERIFICATION BY SOMEONE ACTING ON THE PETITIONER'S
BEHALF PURSUANT TO 28 U.S.C.§ 2242

I am submitting this verification on behalf of the Petitioner because I am one of the Petitioner's attorneys. I have received this information from staff members at law firms, the office file, investigations of counsel, and from the Petitioner, who has granted his lawyers permission to discuss the events described in this Petition with his family. On the basis of this understanding, I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

| | |
|---|---|
| Dated:  February 24, 2026 | BY:<br><br>*S. Michael Musa-Obregon*<br><br><u>S. Michael Musa-Obregon</u><br><u>On the Brief</u> |

CERTIFICATE OF SERVICE

I certify that on February 24, 2026, I caused the foregoing Petition, Emergency Motion, and Order to

Show Cause to be served by electronic mail and certified mail by US POSTAL SERVICE on the

United States Attorney's Office for the DISTRICT OF NEW JERSEY, Civil Division, and by

electronic mail and by certified mail US POSTAL SERVICE on counsel for Respondents, and I

further caused service on Respondents in their official capacities via the U.S. Attorney as permitted by

applicable rule.

*s/ S. Michael Musa-Obregon*
S. Michael Musa-Obregon, Esq.
MUSA-OBREGON LAW P.C.
140 Grand Street, Suite 307
White Plains, NY 10601
michael@musa-obregon.com
718-803-1000
February 22, 2026, New York, NY

Appendix A

Martinez v. Hyde, No. 25-11613, 2025 WL 2084238 (D. Mass. July 24, 2025); Bautista v. Santacruz, No. 25-cv-01873, 2025 WL 2670875 (C.D. Cal. July 28, 2025); Gonzalez v. Noem, No. 25-cv-02054, 2025 WL 2633187 (C.D. Cal. Aug. 13, 2025); Lopez Benitez v. Francis, No. 25 Civ. 5937, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); Dos Santos v. Noem, No. 25-cv-12052, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); Arrazola-Gonzalez v. Noem, No. 25-cv-01789, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); Maldonado v. Olson, No. 25-cv-3142, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); Romero v. Hyde, No. 25-11631, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); Samb v. Joyce, No. 25 Civ. 6373, 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); Ramirez Clavijo v. Kaiser, No. 25-cv-06248, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); Quinonez Mercado v. Dep't Homeland Sec., No. 25-cv-12066, 2025 WL 2430423 (D. Mass. Aug. 22, 2025); Leal-Hernandez v. Noem, No. 25-cv-02428, 2025 WL 2430025 (D. Md. Aug. 24, 2025); Kostak v. Trump, No. 25-1093, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); Diaz Diaz v. Mattivelo, No. 25-cv-12226, 2025 WL 2457610 (D. Mass. Aug. 27, 2025); Lopez-Campos v. Raycraft, No. 25-cv12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); Francisco T. v. Bondi, No. 25-CV-03219, 2025 WL 2629839 (D. Minn. Aug. 29, 2025); Chogllo Chafla v. Scott, No. 25-cv-00437, 2025 WL 2531027 (D. Me. Sept. 2, 2025); Salvador v. Bondi, No. 25-cv-07946, 2025 WL 2995055 (C.D. Cal. Sept. 2, 2025); Hernandez Nieves v. Kaiser, No. 25-cv-06921, 2025 WL 2533110 (N.D. Cal. Sept. 3, 2025); Garcia v. Noem, No. 25-cv02180, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); Doe v. Moniz, No. 25-cv-12094, 2025 WL 2576819 (D. Mass. Sept. 5, 2025); Mosqueda v. Noem, No. 25-cv-02304, 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); Jimenez v. FCI Berlin, Warden, No. 25-cv-326, 2025 WL 2639390 (D.N.H. Sept. 8, 2025); Guzman v. Andrews, No. 25-cv-01015, 2025 WL 2617256 (E.D. Cal. Sept. 9, 2025); Sampiao v. Hyde, No. 25-cv11981, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); Pizzaro Reyes v. Raycraft, No. 25-cv-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); Hernandez Marcelo v. Trump, No. 25-cv-00094, 2025 WL 2741230 (S.D. Iowa Sept. 10, 2025); Lopez Santos v. Noem, No. 25-CV-01193, 2025 WL 2642278 (W.D. La. Sept. 11, 2025); Salcedo Aceros v. Kaiser, No. 25-cv-06924, 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025); Munoz Materano v. Arteta, No. 25 Civ. 6137, 2025 WL 2630826 (S.D.N.Y. Sept. 12, 2025); Pablo Sequen v. Kaiser, No. 25-cv-06487, 2025 WL 2650637 (N.D. Cal. Sept. 16, 2025); Garcia Cortes v. Noem, No. 25-cv02677, 2025 WL 2652880 (D. Colo. Sept. 16, 2025); Vazquez v. Feeley, No. 25-cv-01542, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); Salazar v. Dedos, No. 25-cv-00835, 2025 WL 2676729 (D.N.M. Sept. 17, 2025); Oliveros v. Kaiser, No. 25-cv-07117, 2025 WL 2677125 (N.D. Cal. Sept. 18, 2025); Castellanos v. Kaiser, No. 25-cv-07962, 2025 WL 2689853 (N.D. Cal. Sept. 18, 2025); Barrera v. Tindall, No. 25-cv541, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); Chiliquinga Yumbillo v. Stamper, No. 25-cv-00479, 2025 WL 2688160 (D. Me. Sept. 19, 2025); Hasan v. Crawford, No. 25-cv-1408, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025); Singh v. Lewis, No. 25-cv-96, 2025 WL 2699219 (W.D. Ky. Sept. 22, 2025); Chogllo Chafla v. Scott, No. 25-cv-00437, 2025 WL 2688541 (D. Me. Sept. 22, 2025); Lepe v. Andrews, No. 25-cv01163, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); Giron Reyes v. Lyons, No. C25-4048, 2025 WL 2712427 (N.D. Iowa Sept. 23, 2025); Barrajas v. Noem, No. 25-cv-00322, 2025 WL 2717650 (S.D. Iowa Sept. 23, 2025); Roman v. Noem, No. 25-cv-01684, 2025 WL 2710211 (D. Nev. Sept. 23, 2025); Roa v. Albarran, No. 25-cv-07802, 2025 WL 2732923 (N.D. Cal. Sept. 25, 2025); Lopez v. Hardin, No. 25-cv-830, 2025 WL 2732717 (M.D. Fla. Sept. 25, 2025); Valencia Zapata v. Kaiser, No. 25-cv-07492, 2025 WL 2741654 (N.D. Cal. Sept. 26, 2025); Zumba v. Bondi, No. 25-cv-14626, 2025 WL 2753496  (D.N.J. Sept. 26, 2025);

37

Inlago Tocagon v. Moniz, No. 25-cv-12453, 2025 WL 2778023 (D. Mass. Sept. 29, 2025); Romero-Nolasco v. McDonald, No. 25-cv-12492, 2025 WL 2778036 (D. Mass. Sept. 29, 2025); Chang Barrios v. Shepley, No. 25-cv-00406, 2025 WL 2772579 (D. Me. Sept. 29, 2025); J.U. v. Maldonado, No. 25-CV-04836, 2025 WL 2772765 (E.D.N.Y. Sept. 29, 2025); Quispe v. Crawford, No. 25-cv-1471, 2025 WL 2783799 (E.D. Va. Sept. 29, 2025); Flores v. Noem, No. 25-cv-02490, 2025 WL 3050062 (C.D. Cal. Sept. 29, 2025); Helbrum v. Williams, No. 25-cv-00349, 2025 WL 2840273 (S.D. Iowa Sept. 30, 2025); Chiliquinga Yumbillo v. Stamper, No. 25-cv-00479, 2025 WL 2783642 (D. Me. Sept. 30, 2025); Quispe Ardiles v. Noem, No. 25-cv-01382, 2025 WL 2783800 (E.D. Va. Sept. 30, 2025); Rodriguez v. Bostock, No. 25-cv-05240, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025); Belsai D.S. v. Bondi, No. 25-cv-3682, 2025 WL 2802947 (D. Minn. Oct. 1, 2025); Rocha v. Hyde, No. 25-CV-12584, 2025 WL 2807692 (D. Mass. Oct. 2, 2025); Chanaguano Caiza v. Scott, No. 25-cv-00500, 2025 WL 2806416 (D. Me. Oct. 2, 2025); Casun v. Hyde, No. 25-cv-427, 2025 WL 2806769 (D.R.I. Oct. 2, 2025); Guzman Alfaro v. Wamsley, No. 25-cv01706, 2025 WL 2822113 (W.D. Wash. Oct. 2, 2025); Echevarria v. Bondi, No. CV-25-03252, 2025 WL 2821282 (D. Ariz. Oct. 3, 2025); Pelico v. Kaiser, No. 25-cv-07286, 2025 WL 2822876 (N.D. Cal. Oct. 3, 2025); Patel v. Tindall, No. 25-cv-373, 2025 WL 2823607 (W.D. Ky. Oct. 3, 2025); Guerrero Orellana v. Moniz, No. 25-cv-12664, 2025 WL 2809996 (D. Mass. Oct. 3, 2025); Elias Escobar v. Hyde, No. 25-cv12620, 2025 WL 2823324 (D. Mass. Oct. 3, 2025); Pop v. Noem, No. 25-cv-02589, 2025 WL 3050095 (C.D. Cal. Oct. 3, 2025); Artiga v. Genalo, No. 25-CV-5208, 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025); Hyppolite v. Noem, No. 25-CV-4304, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025); Cumes v. Moniz, No. 25cv-12514, 2025 WL 3197637 (D. Mass. Oct. 6, 2025); S.D.B.B. v. Johnson, No. 25-cv-882, 2025 WL 2845170 (M.D.N.C Oct. 7, 2025); Buenrostro-Mendez v. Bondi, No. H-25-3726, 2025 WL 2886346 (S.D. Tex. Oct. 7, 2025); Ledesma Gonzalez v. Bostock, No. 25-cv-01404, 2025 WL 2841574 (W.D. Wash. Oct. 7, 2025); B.D.V.S. v. Forestal, No. 25-cv-01968, 2025 WL 2855743 (S.D. Ind. Oct. 8, 2025); A.A. v. Olson, No. 25-3381, 2025 WL 2886729 (D. Minn. Oct. 8, 2025); Covarrubias v. Vergara, No. 25-CV-112, 2025 WL 2950097 (S.D. Tex. Oct. 8, 2025); Ortiz Donis v. Chestnut, No. 25-CV-01228, 2025 WL 2879514 (E.D. Cal. Oct. 9, 2025); Chavez v. Kaiser, No. 25-cv-06984, 2025 WL 2909526 (N.D. Cal. Oct. 9, 2025); Ballestros v. Noem, No. 25-cv-594, 2025 WL 2880831 (W.D. Ky. Oct. 9, 2025); Rico-Tapia v. Smith, No. 25-00379, 2025 WL 2950089 (D. Haw. Oct. 10, 2025); Carlos v. Noem, No. 25-cv-01900, 2025 WL 2896156 (D. Nev. Oct. 10, 2025);

Castillo v. Lyons, No. 25-cv-16219, 2025 WL 2940990 (D.N.J. Oct. 10, 2025); Ortiz Martinez v. Wamsley, No. 25-cv-01822, 2025 WL 2899116 (W.D. Wash. Oct. 10, 2025); Alejandro v. Olson, No. 25-cv-02027, 2025 WL 2896348 (S.D. Ind. Oct. 11, 2025); E.C. v. Noem, No. 25-cv01789, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); Singh v. Lyons, No. 25-cv-01606, 2025 WL 2932635 (E.D. Va. Oct. 14, 2025); Merino v. Ripa, No. 25-23845, 2025 WL 2941609 (S.D. Fla. Oct. 15, 2025); Teyim v. Perry, No. 25-cv-01615, 2025 WL 2950183 (E.D. Va. Oct. 15, 2025); Mejia v. Woosley, No. 25-cv-82, 2025 WL 2933852 (W.D. Ky. Oct. 15, 2025); Pablo Sequen v. Albarran, No. 25-cv-06487, 2025 WL 2935630 (N.D. Cal. Oct. 15, 2025); Puga v. Assistant Field Off. Dir., Krome N. Serv. Processing Ctr., No. 25-2453, 2025 WL 2938369 (S.D. Fla. Oct. 15, 2025); J.S.H.M v. Wofford, No. 25-CV-01309, 2025 WL 2938808 (E.D. Cal. Oct. 16, 2025); Piña v. Stamper, No. 25-cv-00509, 2025 WL 2939298 (D. Me. Oct. 16, 2025); Ochoa Ochoa v. Noem, No. 25 CV 10865, 2025 WL 2938779 (N.D. Ill. Oct. 16, 2025); Hernandez Hernandez v. Crawford, No. 25-cv-01565, 2025 WL 2940702 (E.D. Va. Oct. 16, 2025); Contreras-Cervantes v. Raycraft, No. 25-cv-13073, 2025 WL 2952796 (E.D. Mich. Oct. 17, 2025); Sanchez Alvarez v. Noem, No. 25-cv-1090, 2025 WL 2942648 (W.D. Mich. Oct. 17, 2025); Sabi Polo v. Chestnut, No. 25-CV-01342, 2025 WL 2959346 (E.D. Cal. Oct. 17, 2025); Zamora v. Noem, No. 25-12750, 2025 WL 2958879 (D. Mass. Oct. 17, 2025); Menjivar Sanchez v. Wofford, No. 25-cv-01187,

2025 WL 2959274 (E.D. Cal. Oct. 17, 2025); Gutierrez v. Baltasar, No. 25-CV-2720, 2025 WL 2962908 (D. Colo. Oct. 17, 2025); Benitez-Cornejo v. Cantu, No. CV-25-03672, 2025 WL 2992211 (D. Ariz. Oct. 17, 2025); Sandoval v. Raycraft, No. 25-cv12987, 2025 WL 2977517 (E.D. Mich. Oct. 17, 2025); Pacheco Mayen v. Raycraft, No. 25-cv-13056, 2025 WL 2978529 (E.D. Mich. Oct. 17, 2025); Zecua v. Lyons, No. 25-cv-09794, 2025 WL 3150680 (C.D. Cal. Oct. 17, 2025); H.G.V.U. v. Smith, No. 25 CV 10931, 2025 WL 2962610 (N.D. Ill. Oct. 20, 2025); De La Cruz v. Noem, No. C25-150, 2025 WL 3110876 (N.D. Iowa Oct. 20, 2025); Da Silva v. Bondi, No. 25-cv12672, 2025 WL 2969163 (D. Mass. Oct. 21, 2025); Maldonado v. Baker, No. 25-3084, 2025 WL 2968042 (D. Md. Oct. 21, 2025); Miguel v. Noem, No. 25 C 11137, 2025 WL 2976480 (N.D. Ill. Oct. 21, 2025); Casio-Mejia v. Raycraft, No. 25-cv-13032, 2025 WL 2976737 (E.D. Mich. Oct. 21, 2025); Contreras-Lomeli v. Raycraft, No. 25-cv-12826, 2025 WL 2976739 (E.D. Mich. Oct. 21, 2025); Santos Franco v. Raycraft, 37 No. 25-cv-13188, 2025 WL 2977118 (E.D. Mich. Oct. 21, 2025); Avila v. Bondi, No. 25-3741, 2025 WL 2976539 (D. Minn. Oct. 21, 2025); Buestan v. Chu, No. 25-16034, 2025 WL 2972252 (D.N.J. Oct. 21, 2025); Pineda v. Simon, No. 25-cv-01616, 2025 WL 2980729 (E.D. Va. Oct. 21, 2025); Garcia v. Wamsley, No. 25-cv-01980, 2025 WL 3208777 (W.D. Wash. Oct. 21, 2025); Bethancourt Soto v. Soto, No. 25-cv16200, 2025 WL 2976572 (D.N.J. Oct. 22, 2025); Garcia v. Noem, No. 25-cv-02771, 2025 WL 2986672 (C.D. Cal. Oct. 22, 2025); Loa Caballero v. Baltazar, No. 25-cv-03120, 2025 WL 2977650 (D. Colo. Oct. 22, 2025); Padilla v. Noem, No. 25 CV 12462, 2025 WL 2977742 (N.D. Ill. Oct. 22, 2025); Martinez v. Trump, No. 25-1445, 2025 WL 3124847 (W.D. La. Oct. 22, 2025); Lomeu v. Soto, No. 25cv16589, 2025 WL 2981296 (D.N.J. Oct. 23, 2025); Maldonado v. Cabezas, No. 25-13004, 2025 WL 2985256 (D.N.J. Oct. 23, 2025); Del Cid v. Bondi, No. 25-cv-00304, 2025 WL 2985150 (W.D. Pa. Oct. 23, 2025); Esquivel-Ipina v. Larose, No. 25-CV-2672, 2025 WL 2998361 (S.D. Cal. Oct. 24, 2025); Hernandez v. Baltazar, No. 25-cv03094, 2025 WL 2996643 (D. Colo. Oct. 24, 2025); Patel v. Crowley, No. 25 C 11180, 2025 WL 2996787 (N.D. Ill. Oct. 24, 2025); Aguilar Guerra v. Joyce, No. 25-cv-00534, 2025 WL 2999042 (D. Me. Oct. 24, 2025); Carmona v. Noem, No. 25-cv-1131, 2025 WL 2992222 (W.D. Mich. Oct. 24, 2025); Lapop v. Noem, No. 25-cv-016666, 2025 WL 2997507 (E.D. Va. Oct. 24, 2025); Helal v. Janecka, No. 25-cv-02650, 2025 WL 3190132 (C.D. Cal. Oct. 24, 2025); Arias Lopez v. Hyde, No. 25-12680, 2025 WL 3197806 (D. Mass. Oct. 24, 2025); J.A.C.P. v. Wofford, No. 25-cv-01354, 2025 WL 3013328 (E.D. Cal. Oct. 27, 2025); Lopez v. Warden, Otay Mesa Detention Ctr., No. 25-cv-2527, 2025 WL 3005346 (S.D. Cal. Oct. 27, 2025); Sanchez v. Olson, No. 25 CV 12453, 2025 WL 3004580 (N.D. Ill. Oct. 27, 2025); Garcia Picazo v. Sheehan, No. C25-4057, 2025 WL 3006188 (N.D. Iowa Oct. 27, 2025); Martinez-Elvir v. Olson, No. 25-CV-589, 2025 WL 3006772 (W.D. Ky. Oct. 27, 2025); Pineda Velasquez v. Noem, No. 25-3215, 2025 WL 3003684 (D. Md. Oct. 27, 2025); Gimenez Gonzalez v. Raycraft, No. 25-cv-13094, 2025 WL 3006185 (E.D. Mich. Oct. 27, 2025); Tomas Elias v. Hyde, No. 25-cv-540, 2025 WL 3004437 (D.R.I. Oct. 27, 2025); Duarte Escobar v. Perry, No. 25cv758, 2025 WL 3006742 (E.D. Va. Oct. 27, 2025);

Puerto-Hernandez v. Lynch, No. 25-cv1097, 2025 WL 3012033 (W.D. Mich. Oct. 28, 2025); Patel v. Almodovar, No. 25-15345, 2025 WL 3012323 (D.N.J. Oct. 28, 2025); J.G.O. v. Francis, No. 25-CV-7233, 2025 WL 3040142 (S.D.N.Y. Oct. 28, 2025); Lopez v. Hardin, No. 25-cv-830, 2025 WL 3022245 (M.D. Fla. Oct. 29, 2025); Corona Diaz v. Olson, No. 25 CV 12141, 2025 WL 3022170 (N.D. Ill. Oct. 29, 2025); Garcia v. Noem, No. 25-cv-1271, 2025 WL 3017200 (W.D. Mich. Oct. 29, 2025); Rodriguez v. Noem, No. 25-cv-1196, 2025 WL 3022212 (W.D. Mich. Oct. 29, 2025); Ramirez Valverde v. Olson, No. 25-CV-1502, 2025 WL 3022700 (E.D. Wis. Oct. 29, 2025); Oliva v. Noem, No. 25-cv-1592, 2025 WL 3145712 (E.D. Va. Oct. 29, 2025); Martinez Lopez v. Larose, No. 25-cv-2717, 2025 WL 3030457 (S.D. Cal. Oct. 30, 2025); Singh v. Bondi, No. 25-cv-02101, 2025 WL 3029524 (S.D. Ind. Oct. 30, 2025); Ayala Amaya v. Bondi, No. 25-cv-16428, 2025 WL 3033880

(D.N.J. Oct. 30, 2025); L.A.E. v. Wamsley, No. 25-cv-01975, 2025 WL 3037856 (D. Ore. Oct. 30, 2025); Astudillo v. Hyde, No. 25-551, 2025 WL 3035083 (D.R.I. Oct. 30, 2025); Lopez v. Sheehan, No. 25-CV-4052, 2025 WL 3046183 (N.D. Iowa Oct. 30, 2025); Escobar-Ruiz v. Raycraft, No. 25-cv-1232, 2025 WL 3039255 (W.D. Mich. Oct. 31, 2025); De Jesus Ramirez v. Noem, No. 25-cv-1261, 2025 WL 3039266 (W.D. Mich. Oct. 31, 2025); Ruiz Yarleque v. Noem, No. 25-cv-02836, 2025 WL 3043936 (C.D. Cal. Oct. 31, 2025); Arauz v. Baltazar, No. 25-cv-03260, 2025 WL 3041840 (D. Colo. Oct. 31, 2025); Valencia v. Noem, No. 25-cv12829, 2025 WL 3042520 (N.D. Ill. Oct. 31, 2025); Ponce v. Olson, No. 25-cv-13037, 2025 WL 3049785 (N.D. Ill. Oct. 31, 2025); Mejia v. Noem, No. 25-cv-1227, 2025 WL 3041827 (W.D. Mich. Oct. 31, 2025); Godinez-Lopez v. Ladwig, No. 25-cv-02962, 2025 WL 3047889 (W.D. Tenn. Oct. 31, 2025); M.M. v. Wamsley, No. 25-cv-02074, 2025 WL 3053023 (W.D. Wash. Oct. 31, 2025); Garcia v. Noem, No. 25-cv00879, 2025 WL 3041895 (M.D. Fla. Oct. 31, 2025); J.A.M. v. Streeval, No. 25-cv-342, 2025 WL 3050094 (M.D. Ga. Nov. 1, 2025); Flores v. Olson, No. 25 C 12916, 2025 WL 3063540 (N.D. Ill. Nov. 3, 2025); D.E.C.T. v. Noem, No. 25 C 12463, 2025 WL 3063650 (N.D. Ill. Nov. 3, 2025); Mboup v. Field Off. Dir. of N.J. Immigr. and Customs Enf't, No. 25-cv-16882, 2025 WL 3062791 (D.N.J. Nov. 3, 2025); Ramos v. Rokosky, No. 25cv15892, 2025 WL 3063588 (D.N.J. Nov. 3, 2025); Gonzalez v. Sterling, No. 25-CV-6080, 2025 WL 3145764 (N.D. Ga. Nov. 3, 2025); F.M.V. v. Wofford, No. 25-cv-01381, 2025 WL 3083934 (E.D. Cal. Nov. 4, 2025); Beltran v. Noem, No. 25cv2650, 2025 WL 3078837 (S.D. Cal. Nov. 4, 2025); Alonso v. Tindall, No. 25-cv-652, 2025 WL 3083920 (W.D. Ky. Nov. 4, 2025); Mendoza v. Noem, No. 25-cv-1252, 2025 WL 3077589 (W.D. Mich. Nov. 4, 2025); Tumba Huamani v. Francis, No. 25-cv-8110, 2025 WL 3079014 (S.D.N.Y. Nov. 4, 2025); Alvarez Ortiz v. Freden, No. 25-CV-960, 2025 WL 3085032 (W.D.N.Y. Nov. 4, 2025); R.E. v. Bondi, No. 25-CV-3946, 2025 WL 3146312 (D. Minn. Nov. 4, 2025); Arizmendi v. Noem, No. 25 C 13041, 2025 WL 3089107 (N.D. Ill. Nov. 5, 2025); Hernandez Capote v. Sec'y of U.S. Dep't of Homeland Sec., No. 25-13128, 2025 WL 3089756 (E.D. Mich. Nov. 5, 2025); Lopez v. Noem, No. 25-16890, 2025 WL 3101889 (D.N.J. Nov. 5, 2025); Sarmiento v. Perry, No. 25-cv-01644, 2025 WL 3091140 (E.D. Va. Nov. 5, 2025); Rojas Vargas v. Bondi, No. 25-cv-01699, 2025 WL 3251728 (W.D. Tex. Nov. 5, 2025); Mirzoev v. Olson, No. 25-cv-12969, 2025 WL 3101969 (N.D. Ill. Nov. 6, 2025); Pacheco Carrillo v. Noem, No. 25 C 12963, 2025 WL 3101993 (N.D. Ill. Nov. 6, 2025); Hernandez-Luna v. Noem, No. 25-cv-01818, 2025 WL 3102039 (D. Nev. Nov. 6, 2025); Vicens-Marquez v. Soto, No. 25-16906, 2025 WL 3097496 (D.N.J. Nov. 6, 2025); Romero Perez v. Francis, No. 25-cv-8112, 2025 WL 3110459 (S.D.N.Y. Nov. 6, 2025); Garcia v. Noem, No. 25-cv-1712, 2025 WL 3111223 (E.D. Va. Nov. 6, 2025); Vasquez Carcamo v. Noem, No. 25-cv-00922, 2025 WL 3119263 (M.D. Fla. Nov. 7, 2025); Arredondo v. Olson, No. 25-cv-12882, 2025 WL 3124149 (N.D. Ill. Nov. 7, 2025); Rios v. Noem, No. 25-cv-13180, 2025 WL 3124173 (N.D. Ill. Nov. 7, 2025); Morales-Martinez v. Raycraft, No. 25-cv-13303, 2025 WL 3124695 (E.D. Mich. Nov. 7, 2025); Garcia v. Raycraft, No. 25-cv-1281, 2025 WL 3122800 (W.D. Mich. Nov. 7, 2025); Serrano v. Noem, No. 25-cv-1320, 2025 WL 3122825 (W.D. Mich. Nov. 7, 2025); Mendez v. Noem, No. 25-cv-02062, 2025 WL 3124285 (D. Nev. Nov. 7, 2025); Cantero Garcia v. Wamsley, No. 25-cv-02092, 2025 WL 3123996 (W.D. Wash. Nov. 7, 2025); Cruz-Gamez v. Bondi, No. 25-cv-02154, 2025 WL 3130820 (W.D. Wash. Nov. 7, 2025); O.P.A.M. v. Wofford, No. 25-cv-01423, 2025 WL 3120552 (E.D. Cal. Nov. 7, 2025); Munoz v. Noem, No. 25-CV-1753, 2025 WL 3218241 (W.D. Tex. Nov. 7, 2025); Guartazaca Sumba v. Crowley, No. 25-CV-13034, 2025 WL 3126512 (N.D. Ill. Nov. 9, 2025); Perez v. Noem, No. 25 C 13442, 2025 WL 3140692 (N.D. Ill. Nov. 10, 2025); Pere-Gomez v. Warden, Camp E. Mont. Det. Facility, No. 25cv773, 2025 WL 3141103 (E.D. Va. Nov. 10, 2025); Otilio B.F. v. Andrews, No. 25-cv-01398, 2025 WL 3152480 (E.D. Cal. Nov. 11, 2025); Martinez v. Noem, No. 25-cv-12029, 2025 WL 3145103 (N.D. Ill. Nov. 11, 2025); Lopez Briseno v. Noem, No. 25 C

12092, 2025 WL 3145985 (N.D. Ill. Nov. 11, 2025); Sharan S. v. Chestnut, No. 25-cv-01427, 2025 WL 3167826 (E.D. Cal. Nov. 12, 2025); Aquino v. LaRose, No. 25cv-2904, 2025 WL 3158676 (S.D. Cal. Nov. 12, 2025); Guevara v. Swearingen, No. 25 C 12549, 2025 WL 3158151 (N.D. Ill. Nov. 12, 2025); Vasquez Gonzalez v. Olson, No. 25 C 13162, 2025 WL 3158191 (N.D. Ill. Nov. 12, 2025); Diego v. Raycraft, No. 25-13288, 2025 WL 3159106 (E.D. Mich. Nov. 12, 2025); Alvarez v. Noem, No. 25-cv-1313, 2025 WL 3151948 (W.D. Mich. Nov. 12, 2025); Lucero v. Noem, No. 25cv-1295, 2025 WL 3165235 (W.D. Mich. Nov. 12, 2025); E.M. v. Noem, No. 25-cv-3975, 2025 WL 3157839 (D. Minn. Nov. 12, 2025); Guaman Naula v. Noem, No. 25-16792, 2025 WL 3158490 (D.N.J. Nov. 12, 2025); J.Y.L.C. v. Bostock, No. 25-cv-02083, 2025 WL 3169865 (D. Ore. Nov. 12, 2025); Quinapanta v. Bondi, No. 25-cv-795, 2025 WL 3157867 (W.D. Wis. Nov. 12, 2025); Marin v. Andrews, No. 25-cv01422, 2025 WL 3171484 (E.D. Cal. Nov. 13, 2025); Calel v. LaRose, No. 25-cv-02883, 2025 WL 3171898 (S.D. Cal. Nov. 13, 2025); Cabrera v. Noem, No. 25 C 12160, 2025 WL 3171288 (N.D. Ill. Nov. 13, 2025); Serrano v. Salazar, No. 25 C 13170, 2025 WL 3171354 (N.D. Ill. Nov. 13, 2025); Delgado Avila v. Crowley, No. 25-cv-00533, 2025 WL 3171175 (S.D. Ind. Nov. 13, 2025); Caguana-Caguana v. Moniz, No. 25-cv13142, 2025 WL 3171043 (D. Mass. Nov. 13, 2025); Anselmo v. Moniz, No. 25-cv-13309, 2025 WL 3171137 (D. Mass. Nov. 13, 2025); Singh v. Noem, No. 25-cv-1251, 2025 WL 3170855 (W.D. Mich. Nov. 13, 2025); Hernandez v. Noem, No. 25-cv-1307, 2025 WL 3170872 (W.D. Mich. Nov. 13, 2025); Lara v. Noem, No. 25-cv-1332, 2025 WL 3170876 (W.D. Mich. Nov. 13, 2025); Gonzalez v. Noem, No. 25-cv-1315, 2025 WL 3170879 (W.D. Mich. Nov. 13, 2025); Rueda Torres v. Francis, No. 25 Civ. 8408, 2025 WL 3168759 (S.D.N.Y. Nov. 13, 2025); Cantu-Cortes v. O'Neill, No. 25-cv-6338, 2025 WL 3171639 (E.D. Pa. Nov. 13, 2025); Ramandi v. Field Off. Dir., ICE ERO San Francisco, No. 25-CV-01462, 2025 WL 3182732 (E.D. Cal. Nov. 14, 2025); Barreno v. Baltasar, No. 25-cv-03017, 2025 WL 3190936 (D. Colo. Nov. 14, 2025); Villa v. Normand, No. 25-cv-89, 2025 WL 3188406 (S.D. Ga. Nov. 14, 2025); Rodriguez Loredo v. Forestal, No. 25 C 12758, 2025 WL 3187319 (N.D. Ill. Nov. 14, 2025); Quinonez v. Olson, No. 25 CV 13524, 2025 WL 3190598 (N.D. Ill. Nov. 14, 2025); Beltrand v. Mattos, No. 25-cv-01430, 2025 WL 3205283 (D. Nev. Nov. 14, 2025); Pu Sacvin v. Anda-Ybarra, No. 25-cv-01031, 2025 WL 3187432 (D.N.M. Nov. 14, 2025); Cuy Comes v. Deleon, No. 25 Civ. 9283, 2025 WL 3206491 (S.D.N.Y. Nov. 14, 2025); Chavez v. Dir. of Detroit Field Off., No. 25-cv-2061, 2025 WL 3187080 (N.D. Ohio Nov. 14, 2025); Kashranov v. Jamison, No. 25-cv-05555, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025); Cruz Gutierrez v. Thompson, No. 25-4695, 2025 WL 3187521 (S.D. Tex. Nov. 14, 2025); Cardona-Lozano v. Noem, No. 25CV-1784, 2025 WL 3218244 (W.D. Tex. Nov. 14, 2025); Morillo v. Albarran, No. 25-cv-01533, 2025 WL 3190899 (E.D. Cal. Nov. 15, 2025); Faizyan v. Casey, No. 25-cv-02884, 2025 WL 3208844 (S.D. Cal. Nov. 17, 2025); Aguilar v. Noem, No. 25 C 12731, 2025 WL 3204568 (N.D. Ill. Nov. 17, 2025); Soto-Garcia v. Olson, No. 25-cv-13736, 2025 WL 3204594 (N.D. Ill. Nov. 17, 2025); Ayala v. Olson, No. 25 C 13317, 2025 WL 3210398 (N.D. Ill. Nov. 17, 2025); Lara v. Olson, No. 25 C 13110, 2025 WL 3210403 (N.D. Ill. Nov. 17, 2025); Balderas v. Olson, No. 25 C 12749, 2025 WL 3210422 (N.D. Ill. Nov. 17, 2025); Garcia v. Olson, No. 25 C 13621, 2025 WL 3210425 (N.D. Ill. Nov. 17, 2025); Alvarez v. Olson, No. 25 C 13410, 2025 WL 3210461 (N.D. Ill. Nov. 17, 2025); Alarcon v. Moniz, No. 25-cv-13294, 2025 WL 3204553 (D. Mass. Nov. 17, 2025); Gonzalez v. Raycraft, No. 25-13502, 2025 WL 3218242 (E.D. Mich. Nov. 17, 2025); Orellana v. Noem, No. 25-cv-1333, 2025 WL 3198685 (W.D. Mich. Nov. 17, 2025); Cardona v. Unknown Party, No. 25-cv-1287, 2025 WL 3200682 (W.D. Mich. Nov. 17, 2025); Sevilla v. Noem, No. 25-cv-1325, 2025 WL 3200698 (W.D. Mich. Nov. 17, 2025); Guerra v. Noem, No. 25-cv-1341, 2025 WL 3204289 (W.D. Mich. Nov. 17, 2025); Escobar Salgado v. Mattos, No. 25-cv-01872, 2025 WL 3205356 (D. Nev. Nov. 17, 2025); Sandoval v. Rokosky, No. 25-17229, 2025 WL 3204746 (D.N.J. Nov. 17, 2025); Yupangui

v. Hale, No. 25-cv-884, 2025 WL 3207070 (D. Vt. Nov. 17, 2025); Castillo v. Wamsley, No. 25-cv-02172, 2025 WL 3204370 (W.D. Wash. Nov. 17, 2025); Diaz v. Albarran, No. 25-cv-09837, 2025 WL 3214972 (N.D. Cal. Nov. 18, 2025); Torres v. Bondi, No. 25-cv-02457, 2025 WL 3214773 (S.D. Cal. Nov. 18, 2025); Ruiz v. LaRose, No. 25-cv-02714, 2025 WL 3214975 (S.D. Cal. Nov. 18, 2025); Sanchez v. Noem, No. 25-CV-3068, 2025 WL 3214987 (S.D. Cal. Nov. 18, 2025); Perez v. Olson, No. 25 C 13731, 2025 WL 3213967 (N.D. Ill. Nov. 18, 2025); Lopez v. Olson, No. 25-cv-654, 2025 WL 3217036 (W.D. Ky. Nov. 18, 2025); Mendez v. Raycraft, No. 25-cv-1323, 2025 WL 3214100 (W.D. Mich. Nov. 18, 2025); Eshdavlatov v. Arnott, No. 25-cv-00844, 2025 WL 3217838 (W.D. Mo. Nov. 18, 2025); Rodriguez v. Arnott, No. 25-cv-00836, 2025 WL 3218553 (W.D. Mo. Nov. 18, 2025); Cornejo-Mejia v. Bernacke, No. 25-cv-02139, 2025 WL 3222482 (D. Nev. Nov. 18, 2025); Sarmiento Guerrero v. Noem, No. 25-CV-5881, 2025 WL 3214787 (E.D.N.Y. Nov. 18, 2025); Guzman Cardenas v. Almodovar, No. 25-CV-9169, 2025 WL 3215573 (S.D.N.Y. Nov. 18, 2025); Villegas ex. rel. Guzman Andujar v. Francis, No. 25-cv-09199, 2025 WL 3215597 (S.D.N.Y. Nov. 18, 2025); Demirel v. Fed. Det. Ctr. Philadelphia, No. 25-5488, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025); Cortina v. Anda-Ybarra, No. 25-CV-00523, 2025 WL 3218682 (W.D. Tex. Nov. 18, 2025); Singh v. Andrews, No. 25-cv-01543, 2025 WL 3248059 (E.D. Cal. Nov. 19, 2025); W.V.S.M. v. Wofford, No. 25-cv01489, 2025 WL 3236521 (E.D. Cal. Nov. 19, 2025); Elias v. Knight, No. 25-cv-00594, 2025 WL 3228262 (D. Idaho Nov. 19, 2025); Esparza v. Knight, No. 25-cv-00601, 2025 WL 3228282 (D. Idaho Nov. 19, 2025); Rodriguez v. Knight, No. 25-cv-00600, 2025 WL 3228285 (D. Idaho Nov. 19, 2025); Cordoba v. Knight, No. 25-cv-00605, 2025 WL 3228945 (D. Idaho Nov. 19, 2025); Ibarra v. Knight, No. 25-cv-00597, 2025 WL 3228968 (D. Idaho Nov. 19, 2025); Arredondo v. Hollinshead, No. 25-cv-00609, 2025 WL 3228972 (D. Idaho Nov. 19, 2025); Esparza v. Hollinshead, No. 25-cv-00599, 2025 WL 3228974 (D. Idaho Nov. 19, 2025); Gonzalez v. Knight, No. 25-cv-00602, 2025 WL 3228975 (D. Idaho Nov. 19, 2025); Hernandez v. Bondi, No. 25-cv-00615, 2025 WL 3228976 (D. Idaho Nov. 19, 2025); Martinez v. Knight, No. 25-cv-00610, 2025 WL 3228987 (D. Idaho Nov. 19, 2025); Casarez v. Thompson, No. 25-cv-00596, 2025 WL 3228988 (D. Idaho Nov. 19, 2025); Lopez v. Anderson, No. 25-cv-00621, 2025 WL 3228997 (D. Idaho Nov. 19, 2025); Camacho v. Hollinshead, No. 25-cv-00593, 2025 WL 3228998 (D. Idaho Nov. 19, 2025); Rangel v. Knight, No. 25-cv-00607, 2025 WL 3229000 (D. Idaho Nov. 19, 2025); Serrato v. Anderson, No. 25-cv-00603, 2025 WL 3229001 (D. Idaho Nov. 19, 2025); Elias v. Knight, No. 25-cv-00604, 2025 WL 3229013 (D. Idaho Nov. 19, 2025); Ramirez v. Noem, No. 25 C 13651, 2025 WL 3227341 (N.D. Ill. Nov. 19, 2025); Lobera v. Noem, No. 25 CV 13593, 2025 WL 3228984 (N.D. Ill. Nov. 19, 2025); Gonzalez v. Olson, No. 25 C 13439, 2025 WL 3237190 (N.D. Ill. Nov. 19, 2025); Del Villar v. Noem, No. 25-CV-00137, 2025 WL 3231630 (W.D. Ky. Nov. 19, 2025); Ibarra v. Noem, No. 25-cv-1335, 2025 WL 3223765 (W.D. Mich. Nov. 19, 2025); Ortiz v. Raycraft, No. 25-cv-1328, 2025 WL 3223771 (W.D. Mich. Nov. 19, 2025); Martinez v. Unknown Party, No. 25-cv-1298, 2025 WL 3223774 (W.D. Mich. Nov. 19, 2025); Pastor v. Raycraft, No. 25-cv-1301, 2025 WL 3223777 (W.D. Mich. Nov. 19, 2025); Hernandez Franco v. Raycraft, No. 25-cv-1274, 2025 WL 3223780 (W.D. Mich. Nov. 19, 2025); Orozco-Martinez v. Lynch, No. 25-cv-1353, 2025 WL 3223786 (W.D. Mich. Nov. 19, 2025); Francisco T. V. Bondi, No. 25-CV03219, 2025 WL 3236513 (D. Minn. Nov. 19, 2025); Mairena-Munguia v. Arnott, No. 25-cv-3318, 2025 WL 3229132 (W.D. Mo. Nov. 19, 2025); Ortiz v. Bernacke, No. 25-cv-01833, 2025 WL 3237291 (D. Nev. Nov. 19, 2025); Sales v. Mattos, No. 25-cv-01819, 2025 WL 3237366 (D. Nev. Nov. 19, 2025); Duran v. Bernacke, No. 25-cv-02105, 2025 WL 3237451 (D. Nev. Nov. 19, 2025); Perez v. Lyons, No. 25-cv-17186, 2025 WL 3238540 (D.N.J. Nov. 19, 2025); Ndiaye v. Jamison, No. 25-6007, 2025 WL 3229307 (E.D. Pa. Nov. 19, 2025); Figueroa v. Hermosillo, No. 25-cv-02228, 2025 WL 3230466 (W.D. Wash. Nov. 19, 2025); Manzanarez v. Bondi, No. 25-cv-

01536, 2025 WL 3247258 (E.D. Cal. Nov. 20, 2025); Flores v. Noem, No. 25-cv-03011, 2025 WL 3240807 (S.D. Cal. Nov. 20, 2025); Boffill v. Field Off. Dir., No. 25-cv-25179, 2025 WL 3246868 (S.D. Fla. Nov. 20, 2025); Rusu v. Noem, No. 25 C 13819, 2025 WL 3240911 (N.D. Ill. Nov. 20, 2025); Salinas v. Woosley, No. 25-cv-121, 2025 WL 3243837 (W.D. Ky. Nov. 20, 2025); Curillo v. Noem, No. 25-cv-1340, 2025 WL 3235737 (W.D. Mich. Nov. 20, 2025); Beltran v. Raycraft, No. 25-cv1352, 2025 WL 3237429 (W.D. Mich. Nov. 20, 2025); Sanchez v. Noem, No. 25-cv-1361, 2025 WL 3237435 (W.D. Mich. Nov. 20, 2025); Melgar v. Noem, No. 25-cv-1377, 2025 WL 3240058 (W.D. Mich. Nov. 20, 2025); Cabrera-Cortes v. Knight, No. 25-cv-01976, 2025 WL 3240971 (D. Nev. Nov. 20, 2025); Sandhu v. Tsoukaris, No. 25-14607, 2025 WL 3240810 (D.N.J. Nov. 20, 2025); Lucero v. Soto, No. 2516737, 2025 WL 3240895 (D.N.J. Nov. 20, 2025); Sun v. Almodovar, No. 25-cv-9262, 2025 WL 3241268 (S.D.N.Y. Nov. 20, 2025); Escarcega v. Olson, No. CIV-25-1129, 2025 WL 3243438 (W.D. Okla. Nov. 20, 2025); Patel v. McShane, No. 25-5975, 2025 WL 3241212 (E.D. Pa. Nov. 20, 2025); Plascencia v. Bondi, No. CV-25-04140, 2025 WL 3250914 (D. Ariz. Nov. 21, 2025); Padilla v. Bowen, No. 25-cv-10780, 2025 WL 3251368 (C.D. Cal. Nov. 21, 2025); Singh v. Bowen, No. 25-cv-03034, 2025 WL 3251437 (C.D. Cal. Nov. 21, 2025); Juarez v. Noem, No. 25-cv02972, 2025 WL 3251658 (C.D. Cal. Nov. 21, 2025); Velasquez v. LaRose, No. 25-CV-3137, 2025 WL 3251373 (S.D. Cal. Nov. 21, 2025); Diaz-Villatoro v. LaRose, No. 25-CV-3087, 2025 WL 3251377 (S.D. Cal. Nov. 21, 2025); Santos v. LaRose, No. 25-cv-3009, 2025 WL 3251575 (S.D. Cal. Nov. 21, 2025); Marroquin v. LaRose, No. 25-cv-3013, 2025 WL 3251579 (S.D. Cal. Nov. 21, 2025); Lucas-Miguel v. LaRose, No. 25-cv-3022, 2025 WL 3251580 (S.D. Cal. Nov. 21, 2025); Garcia v. Raycraft, No. 25-cv-13407, 2025 WL 3252286 (E.D. Mich. Nov. 21, 2025); Delcid v. Noem, No. 25-cv-1366, 2025 WL 3251139 (W.D. Mich. Nov. 21, 2025); Oropeza v. Noem, No. 25-cv-1343, 2025 WL 3251140 (W.D. Mich. Nov. 21, 2025); Delgado v. Noem, No. 25-cv-1249, 2025 WL 3251144 (W.D. Mich. Nov. 21, 2025); Velasquez-Gomez v. Soto, No. 25-17327, 2025 WL 3251443 (D.N.J. Nov. 21, 2025); Valerio v. Joyce, No. 25-17225, 2025 WL 3251445 (D.N.J. Nov. 21, 2025); Gomez v. Bondi, No. C25-2248, 2025 WL 3251157 (W.D. Wash. Nov. 21, 2025); Ramos v. Hermosillo, No. 25-cv-02273, 2025 WL 3251159 (W.D. Wash. Nov. 21, 2025); Padilla v. Galovich, No. 25-cv-863, 2025 WL 3251446 (W.D. Wis. Nov. 21, 2025).

Appendix B

Pipa-Aquise v. Bondi, No. 25-cv-01094, 2025 WL 2490657 (E.D. Va. Aug. 5, 2025); Chavez v. Noem, No. 25-cv-02325, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); Vargas Lopez v. Trump, No. 25CV526, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); Cirrus Rojas v. Olson, No. 25-cv-1437, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025); Sandoval v. Acuna, No. 25-cv-01467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025); Oliveira v. Patterson, No. 25-cv-01463, 2025 WL 3095972 (W.D. La. Nov. 4, 2025); Mejia Olalde v. Noem, No. 25-cv-00168, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025); Altamirano Ramos v. Lyons, No. 25-cv09785, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025); Cabanas v. Bondi, No. 25-cv-04830, 2025 WL 3171331 (S.D. Tex. Nov. 13, 2025); Valencia v. Chestnut, No. 25-cv-01550, 2025 WL 3205133 (E.D. Cal. Nov. 17, 2025); Alonzo v. Noem, No. 25-cv-01519, 2025 WL 3208284 (E.D. Cal. Nov. 17, 2025); De Andrade v. Patterson, No. 25-cv-01695, 2025 WL 3252707 (W.D. La. Nov. 21, 2025).